Charles L. HENKE, et ux., Appellants,

v.

FIRST SOUTHERN PROPERTIES,
INC., Appellee.

FIRST SOUTHERN PROPERTIES,
INC., Appellant,

v.

Charles L. HENKE, et ux., Appellees.

No. 6016.

Court of Civil Appeals of Texas,
Waco.

Aug. 16, 1979.

Rehearing Denied Sept. 20, 1979.

C. Charles Dippel, Sears & Burns, Houston, for appellants/appellees.

Frank N. Ban, Parks & Moss, Houston, for appellee/appellant.

## OPINION

McDONALD, Chief Justice.

Plaintiffs Charles L. Henke and wife sued defendants First Southern Properties, Inc., Gibraltar Savings Association, Continental Bank of Texas, Harold E. Bro, Brian E. Bro, and P. Blake Hedblom, for title and

possession of a lot [and residence house] in Houston.

Plaintiffs alleged: Charles L. Henke bought the property in 1971 assuming a preexisting first lien note in original amount of $44,000 payable to Gibraltar, and secured by a deed of trust; that Henke and his family moved onto the property, which is their homestead and have lived there since; that in September 1973 Henke executed a note for $28,828.12 to Continental Bank for a preexisting debt unrelated to the property, and in August 1974 executed a note for $2,131.81 to the Bank for accrued interest on the $28,828.12 note; that both notes were purportedly secured by a void second lien on plaintiffs' homestead; that during September 1974 (while Henke was in arrears on the first lien note) Gibraltar posted notice the property would be sold at public foreclosure sale on October 1, 1974; that on September 26 and again on September 30, 1974, Gibraltar agreed with Henke that if $2,156 (past due installments, late charges and attorneys' fees) was paid to Gibraltar by cashier's check prior to foreclosure that the loan would be reinstated and no foreclosure would occur; that the money was paid by the specified time (September 30, 1974) and accepted with the advice that Henke's loan- had been reinstated; that even though the loan had been reinstated, sometime after such on September 30, or October 1, 1974, Gibraltar assigned the first lien note assumed by Henke, to the Continental Bank; that such assignment was void; that Continental Bank on the same day assigned the first lien note, and the $28,828.12 and $2,131.81 notes it held, to Harold E. Bro; that Harold E. Bro purporting to act through his son agent and attorney Brian E. Bro caused P. Blake Hedblom to act as substitute trustee and foreclose upon the first lien note; that Hedblom purported to sell the property at Trustee's sale on October 1, 1974 to First Southern Properties for $76,000 in cashier's checks, and executed a substitute trustee's deed to First Southern Properties evidencing title to the property; that proceeds of the sale were used by Bro to pay Continental Bank for its sale to Harold E. Bro of the first and second lien notes.

Plaintiffs alleged the entire transaction was a sham, that the foreclosure sale was void, that the substitute trustee's deed was void; that the first lien note had been reinstated; that plaintiffs were not in default and no power of sale could be exercised to foreclose their interest in the property.

Plaintiffs sought title and possession of the property; removal of the substitute trustee's deed as a cloud upon their property; and actual and punitive damages based on a conspiracy among all defendants to deprive them of their property.

Defendant First Southern answered counterclaiming for title and possession of the property, for rental thereof, and alleged it had purchased the property at the substitute trustee's sale for $76,000 without notice of any defects, was a bona fide purchaser for value, and entitled to protection as same; and alternatively, if the foreclosure be held invalid, it should be reimbursed the $76,000 paid the substitute trustee.

Prior to voir dire of the jury panel, plaintiffs nonsuited as to their conspiracy claim for actual and punitive damages, and when plaintiffs' case rested, all defendants except First Southern filed a disclaimer of title to the property, the notes and the indebtedness in controversy, and were advised by the court they would be dismissed without adjudicating costs against them in the final judgment, which was done.

The five disclaimers left only plaintiff and First Southern in litigation.

Trial was to a jury which found:

Issue 1. Gibraltar Savings Association agreed with Mr. Henke to reinstate his loan as an installment loan if he would pay $2,156 to it on or before September 30, 1974.

Issue 6. First Southern Properties was a good faith purchaser of the property without notice.

Plaintiffs filed motion the trial court: 1) disregard Issue 6, asserting the concept of good faith purchaser has no application to a purchase at a foreclosure sale; and 2) ren-

der judgment for plaintiffs for title and possession of the property.

First Southern filed motion to render judgment on the verdict that plaintiffs take nothing and that First Southern be decreed title and possession of the property.

The trial court rendered judgment concluding: 1) That Issue 6 should be disregarded; 2) First Southern's motion for judgment should be denied; 3) Plaintiffs are entitled to judgment for title and possession of the property; 4) First Southern by purchasing at the void foreclosure sale became subrogated to the rights of the holder of the first lien note; that in accordance with the jury's answer to Issue 1 the first lien note was reinstated; that plaintiffs are obligated to First Southern as mortgagors under such reinstated first lien note; 5) That after applying plaintiffs' check of $2,156,[1] plus escrow funds, the balance due on the first lien note was $38,-961.38; 6) That amortizing such balance due at 9% interest and by a monthly payment of $395.89 (as provided by such note) shall occur as provided by an attached schedule; 7) The interest of each installment payment occurring *pendente lite* is not awarded to First Southern because it never demanded payment, and because plaintiffs tendered payments but First Southern's subrogors refused such tenders; 8) Plaintiffs should pay First Southern the principal of each installment *pendente lite*, plus such sums as First Southern has expended since November 13, 1975 for insurance on the property in controversy less the amount of taxable costs paid by plaintiffs in this case.

The judgment then decreed: 1) Plaintiffs recover title and possession of the property from all six original defendants; 2) The five defendants filing disclaimers be dismissed as defendants; 3) First Southern Properties take nothing against plaintiffs; 4) The substitute trustee's deed be cancelled and set aside and removed as a cloud on plaintiffs' title to the property; 5) Plaintiffs pay First Southern the total principal of each installment occurring *pendente lite*

November 1, 1974 until date of judgment; plus $1,285.87 insurance premiums paid by First Southern on the property from November 14, 1975 to date of judgment; crediting taxable costs paid by plaintiffs in this case; 6) Plaintiffs pay $395.89 per month on the balance due on the first lien note to First Southern until such indebtedness is paid in full; 7) First Southern pay court costs.

Both plaintiffs Henke and defendant First Southern appeal from the judgment.

The evidence reflects plaintiff Charles L. Henke purchased the property here involved in 1971 assuming a preexisting first lien note in original amount of $44,000 owed to Gibraltar Savings and secured by deed of trust; that Henke and his family moved onto the property and it is plaintiffs' homestead; that in September 1973 and August 1974 Henke executed notes for $28,828.12 and $2,131.81 to Continental Bank unrelated to the property but purportedly secured by a second lien on the property which is void; that in September 1974 Henke was in arrears on the first lien note and Gibraltar posted notice the property would be foreclosed on October 1, 1974; that Gibraltar agreed with Henke they would not foreclose if he paid them $2,156 by cashier's check (representing past due installments, late charges and attorney's fees by September 30, 1974); that Henke paid the money by the time required; that Gibraltar accepted the money with the advice Henke's loan had been reinstated; [and the jury in Issue 1 found that Henke and Gibraltar made such agreement]; that on October 1, 1974 Gibraltar assigned the first lien note to Continental Bank which on the same day assigned it together with its two Henke notes to Harold E. Bro; that Harold E. Bro acting through his son Brian E. Bro caused P. Blake Hedblom to act as substitute trustee and foreclose the first lien note; that Hedblom purported to sell the property at trustee's sale on October 1, 1974 to First Southern for $76,000; executed a substitute trustee's deed to First Southern for the proper-

---

1. The cashier's check plaintiffs had given to Gibraltar.

ty; turned over the $76,000 to Brian E. Bro who used it to pay Continental Bank for the first lien note and the two notes owed by Henke to Continental. There is evidence that First Southern is a good faith purchaser for value of the property without notice, and the jury so found.

*First Southern Properties Appeal*

Defendant First Southern appeals from the judgment on 4 points asserting the trial court erred in disregarding Issue 6 finding it to be a good faith purchaser for value without notice; and erred in overruling First Southern's motion for judgment on the verdict.

■ Assuming the evidence supports the finding that First Southern was a bona fide purchaser without notice at the substitute trustee's sale, the trial court correctly disregarded the finding and correctly overruled First Southern's motion for judgment on the verdict because the doctrine of good faith purchaser for value without notice does not apply to a purchaser at a void foreclosure sale. One who bids upon property at a foreclosure sale does so at his peril. If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property.

*First Southern Properties, Inc. v. Vallone,* Tex., 533 S.W.2d 339 holds "that a purchaser under a power at a foreclosure sale obtains only such title as the trustee had authority to convey. *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671 (1942); *Ford v. Emerich,* 343 S.W.2d 527 (Tex.Civ.App. 1961, writ ref'd n. r. e.); *Bowman v. Oakley,* 212 S.W. 549 (Tex.Civ.App.1919, writ ref'd)".

*Slaughter, supra,* holds that where a mortgagor was not in default in his payments of principal or interest on notes secured by deed of trust, the substitute trustee's deed is void and that the mortgagor could prove the invalidity of the sale in a straight suit to recover the land.

*Ford, supra,* holds a trustee under a deed of trust created to secure a debt has no power to sell trust property, except as such power is found in the deed of trust; and that a purchaser under a power purchases at his peril, and if there is no subsisting power or authority to sell, no title is acquired by the purchaser.

*Bowman, supra,* holds: the rule which protects the bona fide purchaser of the legal title, for value, without notice of the equitable title of another, applies only to cases of purchaser from a holder of the legal title who has power to convey. Therefore if the deed is void for want of legal capacity in the vendor to convey, want of notice in a purchaser is no defense, and no title is acquired by the purchaser.

■ Substitute trustee Hedblom in the case at bar had no power to convey because the note was not in default; the substitute trustee's deed was void; First Southern acquired no title to the property, and the trial court correctly rendered judgment for plaintiffs for the property. All First Southern's points are overruled.

*Plaintiffs Henkes Appeal*

Plaintiffs Henkes appeal contending the trial court erred in granting First Southern: 1) Recovery of installment payments upon the first lien note as though First Southern were holder of the note because there are no pleadings or a prayer for affirmative relief by First Southern claiming to be subrogated to such first lien note; 2) Recovery of insurance payments supposedly made for insurance on the property in the absence of pleading or prayer for such affirmative relief or of evidence of payment of such insurance premiums.

As noted the trial court concluded that First Southern by purchasing at the void foreclosure sale became subrogated to the rights of the holder of the first lien note and decreed that plaintiffs pay the balance due on such note, and further pay the sum of $1,285.87 insurance premiums paid by First Southern on the property.

First Southern responded to plaintiffs' pleadings with a plea of "not guilty"; plead that it was a bona fide purchaser for value without notice at the substitute trustee's sale; alternatively plead that "in the event the foreclosure is held to be invalid for any reason, Defendant should be reimbursed the $76,000 it paid defendant P. Blake Hedblom plus all accrued interest thereon at the legal rate of interest since October 1, 1974, the date of the foreclosure sale". Defendant further filed cross action against plaintiffs for title and possession of the property; and in its prayer prayed plaintiffs take nothing; that First Southern have judgment for title and possession of the property; plus rent at $1500 per month for the time plaintiffs lived in the property after October 1, 1974; "and for such other and further relief as [First Southern] may justly show itself entitled, either at law or in equity".

■ A party may not sustain a favorable judgment on an unpleaded cause of action in the absence of trial by consent. *Oil Field Haulers Assn. v. Railroad Commission of Texas*, Tex., 381 S.W.2d 183.

■ One who discharges the vendor's lien upon lands,—even the homestead—, either by paying as surety, or at the request of the debtor, or at a judicial sale, which, for irregularity in the process, fails to convey the title, is entitled to be subrogated to the lien of the creditor to the extent of the payment made. *Faries v. Cockrill*, Tex., 31 S.W. 190; *Diversified Mortg. v. Lloyd D. Blaylock*, Tex., 576 S.W.2d 794; *Johnson v. Frierson*, Tex.Civ.App. (Waco) Er.Dis. Jdmt.Cor. 133 S.W.2d 594.

■ Thus, First Southern had a cause of action for subrogation of the first lien note on the property. But First Southern did not plead such cause of action. Was such cause of action tried by consent?

In paragraph 21 of plaintiffs' trial pleading plaintiffs recite that they tendered monthly payments on such first lien note to Gibraltar, the Bank and the Bros, and that such tenders were refused on advice such defendants did not own the note. Plaintiffs then plead:

"Plaintiffs are ready, willing and able to perform all other obligations and to do complete equity as between plaintiffs and the lawful holders of the note. * * * In the event this Honorable Court determines that any further sum is due or is to become due the holder under such note and deed of trust and by virtue thereof, plaintiffs stand ready, willing and able and here now offer to deposit such further sums for payment to the holder as law and equity may require, in accordance with the judgment of this Honorable Court".

We hold that by such pleading plaintiffs consented to trial of First Southern's cause of action for subrogation of rights under the first lien note, and overrule plaintiffs' point 1, supra.

The trial court further decreed plaintiffs pay $1,285.87 insurance premiums paid by First Southern on the property. There is no evidence in the record of the payment of such insurance premiums. Point 2 is sustained.

*First Southern's Cross Points*

■ First Southern by cross points assert the trial court erred in denying it recovery of interest installments under the first lien note occurring during litigation. Such points are without merit and are overruled.

The judgment of the trial court is reformed to delete recovery by First Southern of the $1,285.87 insurance premium item, and as reformed is affirmed.

Costs of appeal are taxed ⅔ against First Southern and ⅓ against plaintiffs.

REFORMED & AFFIRMED.