DIVERSIFIED, INC., Appellant,

v.

May Ella WALKER, et al., Appellees.

No. 01–84–0648–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 19, 1985.
Rehearing Denied Jan. 16, 1986.

Richard L. Petronella, Houston, for appellant.

Ronald G. Wiesenthal, Anthony Hall, Jay S. Ginsburg and Meyer Jacobson, Houston, for appellees.

Before JACK SMITH, DUNN and LEVY, JJ.

## OPINION

LEVY, Justice.

Our original opinion of October 24, 1985 is withdrawn and the following is substituted.

This is an appeal from a judgment conditionally cancelling a substitute trustee's deed obtained at a foreclosure.

May Ella Walker ("Walker"), appellee, filed suit to set aside a substitute trustee's deed to Diversified, Inc. ("Diversified"), appellant, at a foreclosure sale in October 1982. Perma Stone Products Company ("Perma Stone") had constructed improvements on property owned by Walker pursu-

ant to the terms of a contract for labor and materials and a trust deed with power of sale, and Walker had agreed to pay Perma Stone under the terms of an installment note. When Walker defaulted in the payment of the note, Perma Stone accelerated the note's maturity after due notice, and sold the property at a foreclosure sale to Diversified.

Diversified filed a counterclaim against Walker in trespass to try title and in the alternative, asked that if the deed is set aside, it recover from Walker the purchase money it paid at the foreclosure sale, plus attorney's fees. As a further alternative if the deed should be set aside, Diversified sought in a cross-claim against Perma Stone and against the party responsible for the collection of the note, Associated Investments ("Associated"), a recovery of damages for loss of the "benefit of the bargain." The trial court sustained Perma Stone's and Associated's special exceptions to Diversified's cross-claim and denied Diversified any recovery. Diversified excepted to the court's ruling and refused to amend its pleadings in order to preserve on appeal the issue of whether it is entitled to recover damages from Perma Stone and Associated for the loss of the bargain when its deed was set aside.

The appellant's first of two points of error asserts that the trial court erred in allowing Walker to pay only the amount of delinquent installments and in not requiring Walker to pay the entire purchase price paid by Diversified at the foreclosure sale, plus attorney's fees, as a condition precedent to the cancellation of the substitute trustee's deed.

■ Walker had agreed to pay Perma Stone, under the terms of a promissory note, monthly installments in the amount of $106.28 for 120 months. Upon Walker's delinquency in payment, Perma Stone instructed its attorney to make written demand for the sum of $496.36, representing four delinquent installments. Perma Stone's attorney made such demand in writing to Walker on August 24, 1982, and on September 13, 1982, after notice, Perma Stone accelerated the maturity of the note by reason of Walker's continued default.[1] In addition to the notices of delinquency and of acceleration, a notice of trustee's sale was given to Walker, advising her that the property would be sold at foreclosure on October 5, 1982. On that date, the property was accordingly sold to Diversified for the sum of $7,500, subject to the unpaid amounts on any superior liens.

Walker acknowledged at the trial that she received both the August and September notices and demands from Perma Stone's attorney. She also testified that prior to the foreclosure sale, she had telephoned the offices of Perma Stone to speak with "Mrs. Floyd," also known as "Mrs. Osborne," the wife of A.L. Osborne, who did business as a sole proprietor using the names of "Perma Stone Products Company" and also, "Associated Investments." Both Perma Stone and Associated had offices at the same location and their operations sometimes overlapped. Associated was the entity actually responsible for the collection of Walker's note.

Walker testified that Mrs. Floyd agreed in September of 1982 that if Walker delivered the delinquent payments and the late charges before the scheduled foreclosure sale, there would be no foreclosure on October 5, 1982. On October 1, 1982, the Friday before the following Tuesday foreclosure sale, in accordance with that oral agreement, Walker brought $331.40 in cash to Perma Stone (or Associated), together with a payroll check in the amount of $210.

---

1. Generally, in the absence of a waiver, the noteholder/creditor must first give the mortgagor/debtor an opportunity to discharge the delinquent indebtedness *before* accelerating. Recently, the Texas Supreme Court reaffirmed this principle in *Williamson v. Dunlap*, 693 S.W.2d 373, 374 (Tex.1985): "The creditor must give the debtor an opportunity to pay the past due installments before acceleration of the entire indebtedness; therefore, demand for payment of past due installments must be made *before* exercising the option to accelerate." The court did not address the question whether a waiver (of demand for payment or of notice of acceleration) in the note would affect this equitable priority.

The cash was accepted, but the check was refused.

On October 5, 1982, Perma Stone's attorney, duly appointed as substitute trustee, having received no instructions to the contrary from Perma Stone, conducted the foreclosure sale and sold the property to Diversified. On October 6, Diversified gave notice to vacate to Walker and also to the occupants of the property. On October 7, Perma Stone's attorney mailed the sum of $331.40 to Walker, advising her that Diversified had purchased the property at the foreclosure sale. On October 8, Walker delivered a cashier's check in the sum of $210 to Associated. On October 11, the $210 cashier's check was returned to Walker by Perma Stone's attorney. This lawsuit quickly followed, seeking to set aside the trustee's deed to Diversified.

In special issue number 1, the jury found that Associated agreed on or about September 27, 1982, to accept all or any part of $531.40 (the sum then due and owing and in default, plus late charges) in a form other than cash as a condition for an agreement not to conduct the foreclosure sale then set for October 5, 1982. The jury also found in special issues 7 and 9 that $600 was the fair market monthly rental for the property, and that $125,000 was the fair market value of the property in October of 1982.

A "final" judgment was signed on July 9, 1984, and a judgment modifying that was signed on September 20, 1984. The July 9th judgment cancelled the substitute trustee's deed but provided, as a condition precedent to its cancellation, that Walker must pay before August 9, 1984, the sum of $531.40 into the registry of the court for the May through September 1982 installments that were returned to her by Perma Stone's attorney. Diversified alleges that though Walker paid this sum, together with interest, into the registry of the court on August 7, 1984, she did not do so until ordered by the trial court in its judgment to make such payments. Walker did not tender to Diversified the amount Diversified paid at the foreclosure sale or the subsequent monthly installments, but rather tendered the installments into the court's registry to comply with a condition of an injunction granted on March 7, 1983, enjoining Diversified from obtaining possession of the property.

The July 9th judgment required Walker to pay only the delinquent installments, amounting to $531.40, as a condition precedent to the deed's cancellation. Appellant argues that Walker should have been required to recompense Diversified for $7,500, which it paid at the foreclosure sale, plus attorney's fees, and relies on *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079 (1938), and *Slaughter v. Oualls*, 139 Tex. 340, 162 S.W.2d 671 (1942). The September 20th modified judgment granted appellant a recovery against A.L. Osborne in the amount of $7,500 with prejudgment interest of $787.81, all to accrue interest at 6%.

In *Jasper State Bank v. Braswell*, contrary to the case at bar, the mortgagee, Jasper State Bank, had exclusive possession of the property under the trustee's deeds, made improvements to the property, kept it insured, and paid all taxes thereon. Texas follows the lien theory of mortgages, *Texas Loan Agency v. Gray*, 12 Tex.Civ. App. 430, 34 S.W. 650 (1896, writ ref'd), and a mortgagee in possession with the express or implied consent of the mortgagor has the right to retain possession until the debt is fully paid. *Jasper State Bank*, 130 Tex. at 554, 111 S.W.2d at 1081; *Majors v. Strickland*, 6 S.W.2d 133, 135 (Tex. Civ.App.—Waco 1928, writ dism'd).

Appellant also relies on *Slaughter v. Oualls*, which seems inapposite to the case at bar. In *Slaughter*, the purchaser at a void foreclosure sale transferred the property to a good faith purchaser. The Texas Supreme Court held that the grantee of the purchaser at the foreclosure sale acquired title, not on the theory that the title actually passed, but rather on the theory that the mortgagor, by the execution of the deed of trust, made it possible to create the appearance of good title in the purchaser at the sale. The court reasoned that it would be

inequitable to permit the mortgagor to show otherwise against the good faith purchaser who had relied upon the deed of trust and subsequent trustee's deed. 139 Tex. at 347, 162 S.W.2d at 675.

■ Walker argues that she has never relinquished possession of the property and that the trustee's sale was void. The trial court found that the sale was void ab initio for failure to cancel the proposed foreclosure sale after Perma Stone (and Associated) agreed with Walker to do so. Diversified did not contest this finding. Whether the trustee's deed is void or voidable depends on its effect upon the title at the time it was executed and delivered. If it was a mere nullity, passing no title and conferring no rights whatsoever, it was absolutely void, but if it passed title to Diversified, the purchaser, thereby accomplishing the thing sought to be accomplished, *subject only to the right of Walker to have it set aside upon proof that the sale was improperly made*, then it was merely voidable. *Slaughter v. Oualls*, 139 Tex. at 345, 162 S.W.2d at 674. Even if a conveyance is regular on its face, it does not always or necessarily operate to pass title between the parties at the time of its execution, particularly in cases of fraud. A deed may be presumptively valid, and yet be utterly void as a conveyance when the presumption is rebutted.

■ In the instant case, since the conditions and limitations on the trustee's power to convey the land were never fulfilled, such power never lawfully came into being, and the foreclosure sale and trustee's deed were therefore void. *See id.*, 139 Tex. at 346, 162 S.W.2d at 675. In *Henke v. First Southern Properties, Inc.*, 586 S.W.2d 617 (Tex.Civ.App.—Waco 1979, writ ref'd n.r. e.), First Southern Properties was a purchaser at a void foreclosure sale. The court held that the trustee conducting the sale had no lawful authority to offer the property for sale, and therefore, the purchaser could not acquire title to the property. 586 S.W.2d at 620. The general effect of a "good faith purchaser for value without notice" does not apply to a purchaser at a *void* foreclosure sale. A purchaser at a foreclosure sale obtains only such title as the trustee had authority to convey. *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex.1976).

In the instant case, Walker, the mortgagor, never relinquished or abandoned the property; Perma Stone, the mortgagee, had agreed not to foreclose; and the trial court properly sought to restore the parties to the same position that they would have been in but for the wrongful sale.

Diversified also contends that Walker should be required to pay its attorney's fees incurred in the enforcement of its rights allegedly acquired under its lien. It bases this contention on the theory that the original contract for labor and material between Walker and Perma Stone provided for attorney's fees in the event that it was given to an attorney for collection, and Diversified was equitably subrogated by its purchase to all the rights of Perma Stone, the noteholder.

■ We observe initially that no authority is cited for this contention, nor have we been able to discover any. Because we have held the trustee's deed to be void, and the foreclosure sale a nullity, it must follow that Diversified was not subrogated to the rights of Perma Stone by its void purchase. Moreover, under section 3.604 of the Tex.Bus. & Com.Code Ann. (Vernon 1968), tender of outstanding sums due on installment notes and a holder's subsequent refusal of that tender would accordingly relieve a debtor of liability for interest, costs, and attorney's fees, but not, of course, from liability for the principal outstanding debt. *See Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex.1982). In order for a maker of a note to avoid payment of attorney's fees for its collection, as provided in the note, it is necessary for him to show tender of payment or its equivalent, which is a showing of willingness and ability to pay at maturity and at the place of payment. *Hostutler v. Alldredge*, 235 S.W. 953, 954 (Tex.Civ.App.—Amarillo 1921, no writ). In the instant case, Walker, by agreement, tendered pay-

ment of the outstanding sums then due and is therefore not liable for Diversified's attorney's fees.

The first point of error is overruled.

Appellant's second point of error asserts that the trial court erred in sustaining special exceptions to Diversified's first and second amended cross-claims against Perma Stone and Associated.

In its first and second amended cross-claims against Perma Stone and Associated, Diversified advanced the following alternative theories of recovery:

1. That the actions of Perma Stone and Associated were made either intentionally or with gross indifference or negligence.

2. That Perma Stone and Associated advertised the property for sale asserting that they had the authority to sell the property, and actually sold the property when they did not have the authority to sell it.

3. That Perma Stone and Associated made false representations to Diversified of past or existing material facts and that those representations were made for the purpose of inducing Diversified to bid and purchase the property in reliance upon those false representations, and that Diversified was entitled to damages pursuant to Section 27.01 of the Texas Business and Commerce Code.

4. That Perma Stone and Associated made statements which were false or recklessly made at the time they conducted the sale with the intent that they be acted upon by Diversified, that Diversified was damaged by relying on such statements, and that Diversified was entitled to damages for fraud under common law.

5. That Perma Stone and Associated had breached both express and implied warranties of title to the property they sold at foreclosure.

By sustaining all the special exceptions of Perma Stone and Associated, the court prevented Diversified from producing any evidence upon the various theories of recovery presented, or indeed from any form of recovery against Perma Stone and Associated. Diversified admits in its exception to the order sustaining the special exceptions that its first and second amended cross-claims are substantially identical.

Diversified refused to amend its pleadings after the special exceptions were sustained a second time, and now contests the validity of the order sustaining the special exceptions. Diversified asserts that a purchaser at a void foreclosure can recover damages in the nature of lost profits from the noteholder, and relies upon the theories of negligence, fraud, Tex.Bus. & Com.Code Ann. sec. 27.01 (Vernon 1968 and Supp. 1985), and breach of warranty of title. Diversified further asserts, but Perma Stone denies, that its claim for lost profits from the noteholder is one of first impression.

■ Diversified, in its first theory of recovery, negligence and gross negligence, cites no authority—and we have been unable to discover any—but argues that the noteholder has a duty to a purchaser to conduct its foreclosure sale using ordinary prudence, considering that the legal prerequisites to acceleration, posting, and the conduct of the sale are within the exclusive information and control of the noteholder. If the mortgagor is able to set aside the deed, the purchaser at the sale should be subrogated to the mortgagor's alternative remedy of damages, thus tending both to protect the mortgagor and to ensure the fairness of the sale. The mortgagee would act more carefully in conducting the harsh remedy of nonjudicial foreclosure, Diversified argues, if the mortgagee was also liable to the purchaser at the sale for lost profit if the deed is subsequently cancelled because of the mortgagee's wrongful conduct. The Texas Supreme Court has held in *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d at 343, "[A] purchaser without actual notice under an execution or deed of trust sale is entitled to recover his money as was ordered in the present case." Perma Stone replies that the only duty at a foreclosure sale is imposed, not on the noteholder/creditor, but on the purchaser,

to ascertain whether the substitute trustee has been empowered to make the sale. *Bowman v. Oakley*, 212 S.W. 549, 552 (Tex.Civ.App.—Fort Worth 1919, writ ref'd). We find that the law imposes no duty that will support an action based on the theories of negligence or gross negligence.

In its second theory of recovery, fraud, Diversified relies upon Tex.Bus. & Com. Code Ann. sec. 27.01. But again, Diversified offers no authority and little argument to support recovery under section 27.01. Its theory is that Perma Stone's notice of the substitute trustee's sale and the substitute trustee's deed contained statements that were material misrepresentations and that they were both false, but it is arguable, at best, that its pleadings stated the specific facts necessary to substantiate its claim of fraud. Diversified also argues that it had a cause of action for common law fraud, stating that its cross-claim contained all the elements of common law fraud as defined by the Texas Supreme Court in *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983), and that the trial court should have allowed it to go forward with its proof. Relying on *Texas Federal Savings & Loan Association v. Davis*, 668 S.W.2d 816 (Tex.App.—Dallas 1984, no writ), Perma Stone argues that Diversified is not entitled to recover lost profits under its fraud theory because breaches of Tex. Rev.Civ.Stat.Ann. article 3810 [2]—now Tex. Prop.Code Ann. sec. 51.002 (Vernon 1984)—regulating nonjudicial foreclosures, are not considered torts.

■ Sec. 27.01 is generally less demanding than common law fraud, imposing liability upon the maker of a misrepresentation without proof that he intended to deceive or knew that the representation was false. To establish statutory fraud, the plaintiff must show that the tortfeasor made a material and false misrepresentation with the intent that another party act on it, and that the other party did act in reliance thereon and thereby suffered damages. *Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 516 S.W.2d 138 (Tex. 1974); *Goodwin v. Daniel*, 93 S.W. 534 (Tex.Civ.App.1906, writ ref'd).

■ Although we see nothing in sec. 27.01 that would preclude its application to a trustee's sale of real estate at a foreclosure, we remain unconvinced that appellant has alleged or proved the necessary facts in this case to establish a 27.01 fraud. Without supporting authority, we, as an intermediate appellate court, decline to sustain this argument.

■ Diversified's final theory of recovery is warranty of title, for which it again cites no authority. And again, our research has not resulted in any authority or precedents for the claim that the trustee has a duty to warrant the title he is selling. Diversified seems to argue that the invalidation of its title was due to the noteholder's failure to follow the law prior to conducting its sale, and as an innocent purchaser at the sale, Diversified relied upon the express warranty of the substitute trustee to convey good title. Diversified asserts that it should therefore be able to recover its lost profit for the noteholder's breach of its express warranty of title. Perma Stone replies that Diversified could recover only the consideration paid, plus interest, for a breach of warranty—if in fact there was any. *Wiggins v. Stevens*, 246 S.W. 84 (Tex.Comm'n App.1922, opinion adopted).

We conclude that there is no precedent in the law that would support any theory of warranty on the part of the noteholder. Perma Stone essentially argues that the purchaser cannot acquire good title if the trustee has no power or authority to offer the property for sale. *See Henke v. First Southern Properties*, 586 S.W.2d at 620. Purchasers of land from a substitute trustee's sale are not relieved from the necessity of inquiring whether the trustee had been empowered to sell. One who bids on property at a foreclosure sale does so "at his peril." *Id.* at 620. Purchasers assume

2. 1889 Tex.Gen.Laws 1171, *repealed by* Ch. 576,     sec. 6, 1983 Tex.Gen.Laws 3729.

that the trustee has power to make the sale at their peril, and where he is without power, or there is other defect or irregularity that would render the foreclosure sale void, then the purchaser cannot acquire title to the property. *Bowman v. Oakley*, 212 S.W. at 552.

We conclude that, in the apparently total absence of any authority supporting Diversified's theories of recovery, the trial court did not abuse its discretion in sustaining the special exceptions to Diversified's first and second amended cross-claims. Appellant's second point of error is overruled.

■ We turn now to appellee Walker's cross-action. In Walker's single cross-point of error, she argues that the trial court erred in not awarding her attorney's fees against Diversified. She asserts, and Diversified does not contest, that part of the relief she sought was a declaratory judgment, and that the preponderance of the trial court's judgment was in the nature of declaratory relief. Walker relies upon Tex.Rev.Civ.Stat.Ann. art. 2524–1, sec. 10 (Vernon Supp.1985), which provides for the discretionary award of attorney's fees in a case brought under the Uniform Declaratory Judgments Act, as follows:

> In any proceeding under this Act, the Court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just.

Walker submitted no issue to the jury concerning any breach of contract or wrongdoing by Diversified, and admitted that she had no relationship with Diversified until after the foreclosure sale. She has thus not shown that the trial court abused its discretion in refusing to award her attorney's fees, and in fact does not clearly raise this issue on appeal.

Walker's cross-point is overruled.

The judgment of the trial court is accordingly affirmed.

DUNN, J., concurs in the result only.