809 F.2d 272
 In re John Hugh NILAND, Debtor.
Tim TRUMAN and John Niland, Plaintiffs-Appellees,
v.
Darwin DEASON, Defendant-Appellant,
v.
CONTINENTAL SAVINGS ASSOCIATION, Defendant-Appellee.
 No. 86-1005.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 10, 1987.
 
 Randall, Circuit Judge, filed dissenting opinion.
 W. Mike Baggett, Linda G. Lucas, Dallas, Tex., for defendant-appellee.
 Philip I. Palmer, Jr., Dallas, Tex., for Niland and Truman.
 Michael S. Holmes, Bernard Wm. Fischman, Houston, Tex., for Continental.
 Appeal from the United States District Court for the Northern District of Texas.
 Before POLITZ, RANDALL and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 In this bankruptcy case, Darwin Deason appeals from the district court's judgment in favor of the appellees. Because we find that the district court erred by holding that appellee John Niland was not estopped from asserting his homestead claim, we reverse the district court's judgment.
 
 
 2
 * In September 1971, John H. Niland and his wife purchased a house located at 4717 Miron Drive, Dallas, Texas (the Property). In September 1977, John Niland purchased a condominium unit at Hollows North Condominium (the Condo). Niland and his wife were later divorced. In 1982 Niland borrowed $113,500 from Richardson Savings & Loan, with the Property as security. As a part of that transaction, on January 4, 1982, Niland executed an affidavit to Richardson Savings & Loan Association in which he claimed the Condo as his homestead. At the time he executed this affidavit, Niland knew the affidavit was false, or that it was made recklessly without any regard for the truth. Niland also made the affidavit with knowledge that it would be acted upon by Richardson Savings & Loan Association. In February 1983, Niland obtained a $300,000 loan from Continental Savings & Loan (CSA), secured by a first lien upon the Property. Again, Niland falsely claimed by affidavit that the Condo was his residence. Approximately $120,000 of the loan was used to pay off the mortgage to Richardson Savings. As part of the loan agreement, Niland executed a deed of trust conveying the Property to David Wyle, as Trustee for CSA.
 
 
 3
 On February 18, 1983, Technical Chemical Company recovered a judgment by default against Niland. On October 14, 1983, the president of Technical Chemical executed a release of judgment lien against the Condo, based on Niland's declaration that the Condo was his homestead. As a result of Niland's declaration and the release based upon the protection afforded homestead claimants under Texas law, Technical Chemical was unable to satisfy its judgment.
 
 
 4
 In March 1983, Niland defaulted on the mortgage payments to CSA, and in June, CSA accelerated the amount due. CSA foreclosed on the Property, selling it for $320,000 to the appellant, Darwin Deason, at an auction on August 2. Deason allowed Niland to continue to live on the Property until October 1983. When Niland refused to vacate the premises, Deason filed a forceable entry and detainer suit against him. Shortly thereafter, Niland filed for relief under chapter 13 of the Bankruptcy Act, and removed the forceable entry and detainer suit to bankruptcy court.
 
 
 5
 The bankruptcy court found that the Property was Niland's homestead, and that Niland was not estopped under Texas law from claiming it as his homestead, 50 B.R. 468. The bankruptcy court then imposed an equitable lien against Niland's homestead interest, and awarded title to the remainder to Deason. Finding that the Property could not feasibly be divided, the court made Deason and Niland co-tenants in the Property, granting Deason a fractional undivided interest proportionate to the size of the nonexempt portion of the Property, and also an equitable lien on the Property to secure the judgment against Niland for fraud and breach of warranty.
 
 
 6
 The parties appealed this judgment in the district court which affirmed, finding the Property to be Niland's homestead, denying a constructive trust for the benefit of Deason, and denying Deason's breach of warranty and representation claims against CSA. The district court reversed the bankruptcy court's imposition of an equitable lien on the nonexempt portion of the Property in favor of Deason, and held that the bankruptcy court erred in holding Deason and Niland to be co-tenants. The district court also denied Deason's request to alter and amend the judgment to reflect the bankruptcy court's judgment in Deason's favor for $163,303.68, plus prejudgment interest based on Niland's fraud and breach of warranty.
 
 
 7
 Finally (since Texas law limits the size of the homestead exemption to one acre), the district court ruled that Niland was largely free to designate which portion of the property he planned to claim as his homestead.
 
 
 8
 After the district court denied Deason's motion for reconsideration and amendment, Deason filed a timely notice of appeal.
 
 II
 
 9
 A number of complex issues are raised by the parties on appeal. Appellant Deason claims that both the district court and the bankruptcy court erred by failing to find breach of warranty by CSA in connection with its sale of the Property to Deason. According to Deason, these courts also erred by failing to impose a constructive trust on the proceeds of the foreclosure sale for the benefit of Deason. Deason further argues that the district court erred by affirming the bankruptcy court's finding that the Property was Niland's homestead, and that Niland was not estopped from claiming it. But Deason also argues that the district court erred in reversing the bankruptcy court's imposition of an equitable lien against Niland's homestead interest in favor of Deason. Deason contends that the homestead designation issue was improperly raised before the district court because it was not raised before the bankruptcy court. Finally, Deason argues that the bankruptcy court's judgment should be reinstated to reflect the court's finding in favor of Deason against Niland based on fraud and breach of warranty claims. On the other hand, the appellees CSA and John Niland argue that the district court judgment should be affirmed.
 
 
 10
 We affirm the holding of the district court that the Property was Niland's homestead. However, we reverse its finding that estoppel did not apply to Niland's homestead claim. Since we decide that Niland is estopped from claiming the property as his homestead, we do not reach the other issues on appeal as they are premised on Niland's ability to claim the homestead exemption.
 
 III
 
 11
 Deason contends that the bankruptcy court erroneously found that the Property was Niland's homestead, and that the district court erred by affirming the bankruptcy court's finding. We disagree.
 
 
 12
 The rule under Texas law is that to establish a homestead claim one must show concurrently (1) overt acts of homestead usage of the property; and (2) intent on the part of the owner to claim the property as homestead. Sims v. Beeson, 545 S.W.2d 262, 263 (Tex.Civ.App.1976). Both elements must be proved. McFarlane v. First Nat. Bank, 97 S.W.2d 754, 760-61 (Tex.Civ.App.1936).
 
 
 13
 Once the homestead character attaches to realty, that character continues until the homestead is abandoned, conveyed, until another homestead is acquired, or until the homestead claimant dies and is not survived by constituent family members entitled to the homestead exemption. Hollifield v. Hilton, 515 S.W.2d 717, 721 (Tex.Civ.App.1974). Abandonment occurs when the former claimant (1) intends permanently to discontinue the homestead use of the property; and (2) actually discontinues such use. Franklin v. Woods, 598 S.W.2d 946, 949 (Tex.Civ.App.1980). A temporary departure from the homestead does not constitute abandonment. E.g., McFarland v. Rousseau, 667 S.W.2d 929, 931 (Tex.App.1984).
 
 
 14
 The bankruptcy court applied the correct legal standard. The bankruptcy court found, as a matter of fact, that from September 21, 1971, onward, Niland had lived in open, actual and obvious possession of the Property, and that at no time did he ever intend to abandon the Property as his homestead. The bankruptcy court therefore concluded that Niland could validly claim the Property as his homestead. The district court upheld the bankruptcy court's determination because, as trier of fact, that court's factual findings were not clearly erroneous. We agree with the district court that the bankruptcy court's factual findings were not clearly erroneous, and we therefore find that the district court properly upheld the bankruptcy court's finding that the property was Niland's homestead.
 
 IV
 
 15
 We conclude, however, under the facts of this case, that Niland is estopped from claiming his homestead exemption. We note at the outset that it is clear under Texas law that if a debtor's property has been used for homestead purposes (i.e., occupied and used generally as a home), the debtor may not be estopped from claiming the property as a homestead despite his or her fraudulent statements to the contrary. Lincoln v. Bennett, 138 Tex. 56, 156 S.W.2d 504 (1941); Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12 (Tex.1890). A debtor may, however, be estopped from claiming property as a homestead if the purchaser checks the deed records and discovers a deed from the debtor to another party. Eylar v. Eylar, 60 Tex. 315 (1883).
 
 
 16
 In this case, Niland did occupy and use the property as a home, and the purchaser Deason did not check the deed records. Thus, under principles of Texas law, estoppel would not apply to Niland's homestead claim unless there are additional facts upon which Deason can rely to estop Niland from reaping the benefit of the fraud he has perpetrated on several persons. We believe there is one additional fact of pivotal significance. Niland claimed that the Condo was his homestead, and he received a manifest and material benefit as a result of that claim: a creditor lifted a judgment lien on the Condo. Although there appears to be no Texas case which deals with this exact situation, we do believe that a Texas court would apply the doctrine of estoppel in these circumstances.
 
 
 17
 Under Texas law a debtor is entitled to only one homestead.[1] Davis v. Hawn Lumber Co., 193 S.W.2d 263, 265 (Tex.Civ.App.1946); Silvers v. Welch, 91 S.W.2d 686, 687 (Tex.Com.App.1936). But here, the effect of recognizing Niland's homestead rights to the Property is to provide legal rights to two homesteads for Niland. Niland falsely represented that the Condo was his homestead and, as a result, a judgment lien on the Condo was released. Niland now seeks relief from foreclosure on a different piece of property, which he earlier fraudulently claimed not to be his homestead, but which he now acknowledges to be his actual homestead. Although it may be true that Niland would not in fact be entitled to claim the Condo as a homestead, it is nevertheless true that he benefitted from that false claim. Failure to apply estoppel here would result in Niland's receiving the benefit of two homestead exemption claims. Although Texas courts have been zealous in protecting the right of debtors to receive the benefit of a single homestead exemption, we believe that they would estop a debtor from actually benefitting from two different and unrelated coeval homestead exemptions as a result of his fraud.
 
 
 18
 Texas' law of homestead rights places the debtor who falsely denies that a piece of property is his homestead in the same position as one who properly claims property as a homestead. See Lincoln v. Bennett, 138 Tex. 56, 156 S.W.2d 504; Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12; Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847 (Comm'n App.1942). In either case the debtor receives one, and only one, homestead right. But if estoppel were not applied in this case, Niland would be placed in a position superior to that of an honest homestead claimant since he would receive the benefit of two homestead claims. Indeed, Niland could recover greater homestead rights than any previous fraudulent homestead claimant had under Texas law. We do not believe that the Texas courts would permit the fraudulent homestead claimant to receive greater homestead rights than the honest debtor who properly claims the single homestead exemption to which he is entitled. We therefore conclude that under the facts of this case Niland should be estopped from claiming the Property as his homestead.V
 
 
 19
 For the foregoing reasons, we reverse the district court's judgment. We remand the case for futher proceedings consistent with this opinion.
 
 
 20
 REVERSED AND REMANDED.
 
 RANDALL, Circuit Judge, dissenting:
 
 21
 Today the panel holds that under the facts of this case a debtor is estopped from claiming his Texas constitutional homestead exemption for property which is admittedly his homestead because he has previously obtained the release of a judgment lien on another piece of property (the Condo) by fraudulently claiming the Condo as his homestead. Because I think that this holding is without basis in existing Texas homestead law, I respectfully dissent.
 
 I.
 
 22
 Nearly one hundred years of Texas decisions have held that a homestead claimant is not estopped to assert his homestead exemption on the basis of declarations made to the contrary. As the Texas Supreme Court has stated:
 
 
 23
 The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise thereby in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution.
 
 
 24
 If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and encumber homesteads with liens forbidden by the Constitution.
 
 
 25
 Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 89, 13 S.W. 12, 13 (Tex.1890) (citations omitted); see also Burkhardt v. Liberman, 138 Tex. 409, 415, 159 S.W.2d 847, 852 (Tex.Comm'n App.1942, opinion adopted); Lincoln v. Bennett, 138 Tex. 56, 61-62, 156 S.W.2d 504, 506-07 (1941). This rule applies even if, as in this case, the homestead claimant has executed, acknowledged, and filed in the deed records an instrument designating a contrary homestead. See Lincoln, 138 Tex. at 58, 156 S.W.2d at 505. The majority is heavily influenced by the fact that the debtor Niland "received a manifest and material benefit as a result of [his earlier fraudulent homestead] claim: a creditor lifted a judgment lien on the Condo." But the fact is that in those Texas cases refusing to apply estoppel against a homestead claimant, there was always some benefit gained by the homestead claimant that induced him to make the false homestead designation--usually the obtaining of a loan that the lender acquiring the invalid lien on homestead property would not otherwise have made. Hence, it is clear that mere benefit to the homestead claimant is insufficient to estop him from later claiming his homestead. However, it is just another type of benefit that the panel held to operate to estop the homestead claimant in this case.
 
 
 26
 The panel attempts to support its decision by arguing that under Texas law a person is only entitled to one homestead and that to refuse to invoke the doctrine of estoppel in this case would allow the debtor Niland to reap the benefits of two homestead exemptions. Although the panel is correct that a Texas homestead claimant is only entitled to a single residential homestead, this argument misses the point because it ignores the fact that Niland received no actual homestead rights in the Condo because of his representations to CSA and Technical Chemical Company ("TCC"). The panel opinion states: "We do not believe that the Texas courts would permit a fraudulent homestead claimant to receive greater homestead rights than the honest debtor who properly claims the single homestead exemption to which he is entitled." Niland, however, received no homestead rights in the Condo by his declaration to TCC; he merely convinced TCC to release its lien. There is no finding that TCC attempted to execute judgment on the Condo, or that a Texas court of competent jurisdiction had held that execution could not be had because of the homestead character of the Condo. Hence, Niland merely received another benefit by his fraud, in addition to obtaining a loan that he possibly would not otherwise have obtained, when he convinced TCC to release its lien on the Condo; he received no homestead rights.
 
 
 27
 The Texas courts have frequently applied Texas homestead law to aid the undeserving, because of a perception that to permit an estoppel to operate on the basis of a sworn declaration by a person living on property that the property is not his homestead would result in the routine execution of such affidavits by persons owning homesteads in order to obtain non-purchase money loans, thereby rendering the constitutional protection of homesteads nugatory. Comment, Estoppel of Husband and Wife to Claim Constitutional Protection of Their Homestead, 25 Tex. L.Rev. 76, 85 n. 42 (1947). It is of course possible that the Texas courts would choke on Niland (more undeserving than most) and would carve out the exception suggested by the panel opinion. But the fact remains that no prior Texas cases have done so and it is not the province of this court to modify Texas constitutional law.
 
 II.
 
 28
 Even assuming that a Texas court would apply estoppel on the facts of this case as related in the panel opinion, it is unlikely that estoppel would be applied when other undisputed facts in this case are given proper consideration. In order to demonstrate why estoppel is inappropriate, it is only necessary to point out some factual matters that are omitted from or given only brief consideration in the panel opinion. First, the panel opinion casts Deason in the role of a mere good faith purchaser at a foreclosure sale, who bought without knowledge or notice of Niland's adverse homestead claim. This picture is contrary to the actual facts in this case. Deason had at least constructive notice of the homestead status of the property at the time that he purchased at the foreclosure sale. The bankruptcy court found that prior to the foreclosure sale at which Deason acquired the property, he and his wife had been shown the property by a realtor, and that Niland was present at this time and living in the property. See In re Niland, 50 B.R. 468, 473-74 (Bankr.N.D.Tex.1985). At the time Deason was shown the property, it was listed for an asking price of either $545,000 or $495,000. Id. When Deason purchased the property at the foreclosure sale, he paid only $320,000. Id. The bankruptcy court found the fair market value of the property at the time of the foreclosure sale to be $370,000. Id. at 474. Hence, the facts establish that Deason, far from being an innocent purchaser at the foreclosure sale, had ample facts to put him on notice that the property might be Niland's homestead. Having such notice, Deason could not under Texas law invoke the doctrine of estoppel. Burkhardt, 138 Tex. at 415-16, 159 S.W.2d at 851-52. As one commentator has noted:
 
 
 29
 This doctrine of "constructive notice" to the purchaser is sometimes rather harsh in its result, since in almost all of these cases there has been conduct either intentionally or constructively fraudulent on the part of the [homestead] claimants. However, the policy of the courts has been to go rather far in protecting the family homestead, and the buyer of lien notes or realty must come into court with absolutely clean hands.
 
 
 30
 Comment, supra, 25 Tex.L.Rev. at 81. Furthermore, the facts indicate that Deason, hoping to obtain the property at $225,000 less than its original listing price and $50,000 less than its fair market value, declined to purchase the property from Niland but instead merely awaited the foreclosure sale. Texas courts have not been inclined to protect purchasers at a foreclosure sale; the general rule is that a purchaser at a foreclosure sale buys at his peril. Henke v. First Southern Properties, Inc., 586 S.W.2d 617, 620 (Tex.Civ.App.--Waco 1979, writ ref'd n.r.e.). Furthermore, "[t]he general effect of a 'good faith purchaser for value without notice' does not apply to a purchaser at a void foreclosure sale. A purchaser at a foreclosure sale obtains only such title as the trustee had authority to convey." Diversified, Inc. v. Walker, 702 S.W.2d 717, 721 (Tex.App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). Had Deason wanted to be fully protected, he could have simply purchased the property from Niland. He would have received a warranty deed from Niland, and this litigation would not have arisen. Instead, thinking that he could obtain the property for less than it was worth, Deason bought at a foreclosure sale. He was able to get the property at a good price, but, under Texas law, he risked the possibility that there would be a failure of title, as in fact there was (or should have been). In short, Deason, hardly an innocent purchaser to begin with, took his chances at buying at the foreclosure sale and when the deal went bad he sought relief in court. A Texas court would not protect him, and this court should also decline to do so.
 
 
 31
 Similarly, appellant CSA is hardly free of wrongdoing in this case. Again, the panel opinion casts CSA in the role of an innocent financial institution that was "taken in" by the unscrupulous Niland's false affidavit that the Condo, and not the property in question, was his homestead. This characterization of CSA is inaccurate for two reasons. First, the bankruptcy court found that Niland was living in the property at the time that the loan was made, thus putting CSA on constructive notice of the homestead status of the property. Second, the bankruptcy court found, and CSA apparently does not dispute, that a CSA loan officer accepted a $5,000 bribe from Niland to expedite the loan. In re Niland, 50 B.R. at 472. Although the bankruptcy court found as a fact that CSA relied on Niland's affidavit that the property was not his homestead at the time that they granted Niland the loan, one wonders whether, in the absence of the bribe, CSA would have taken more time to investigate the possible homestead status of the property more closely before making the loan. CSA, therefore, like Deason, can hardly be said to be a good faith actor in this case, and would therefore also not be entitled to seek equity before either a Texas court or this court. Assuming that Deason, as a purchaser at an invalid execution sale, would be entitled to be subrogated to CSA's rights, see, e.g., Russell v. Starkeys, 286 F.2d 736, 739 & n. 4 (5th Cir.1961), this would still not enable Deason to assert the equitable doctrine of estoppel. Hence, regardless of whether the majority of this panel correctly applied Texas law, Deason should not be able to assert estoppel against Niland.
 
 III.
 
 32
 The bankruptcy and the district judge, both knowledgeable in Texas law, correctly decided the estoppel issue. I would affirm their decision that Niland was not estopped to assert his homestead exemption.
 
 
 
 [1]
 We acknowledge the importance accorded to the homestead right by Texas law. The homestead rights of Texas citizens are guaranteed by the state constitution, Tex. Const., art. 16, Sec. 50, which provides:
 Sec. 50. The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasanace shall be void. This amendment shall become effective upon its adoption.
 However, the reach of the protection afforded by this provision does not extend beyond the right to a single homestead exemption. In this case Niland claimed the Condo as his homestead and received the intended constitutional protection, relief from foreclosure. We do not believe that the Texas Constitution confers further benefit on Niland by granting relief from foreclosure on a second piece of property.