**DIVERSIFIED, INC., Appellant,**

v.

**GIBRALTAR SAVINGS ASSOCIATION, et al., Appellees.**

**No. A14–87–044–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 22, 1988.

Harriet Hubacker, Houston, for appellant.

Larry Huelbig, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from an order of summary judgment precluding the appellant, Diversified, Inc. ("Diversified"), from all but one of its purported causes of action. Diversified, the purchaser at a void foreclosure sale, sued Gibraltar Savings Association ("Gibraltar"), the lien holder, Diane Smith, the substitute trustee who conducted the foreclosure sale, and Lapin, Totz & Mayer, alleging breach of express and implied warranties, breach of contract, statutory and common law fraud, negligence and negligent misrepresentation, and violations under the Texas Deceptive Trade Practices—Consumer Protection Act, TEX. BUS. & COM.CODE ANN. § 17.41 *et seq.* (Vernon 1987). We affirm in part and reverse and remand as to appellant's asserted cause of action under the DPTA.

Gibraltar was the lienholder, pursuant to a Deed of Trust, of certain real property owned and possessed by Andrew and Rebecca Johnson. When the Johnsons became delinquent in their payments in early 1985, Gibraltar gave them notice of default, acceleration and foreclosure sale. Accordingly, Diane Smith, of Lapin, Totz & Mayer was appointed Substitute Trustee by Gibraltar, with instructions to sell the subject real property at foreclosure sale. The sale was scheduled for May 7, 1985.

On or about April 26, 1985, as a result of Gibraltar's prior demands, the Johnsons paid the note balance in full. At that time the Johnsons were advised that no further action would be taken by Gibraltar upon its scheduled foreclosure. However, according to Bret Maxwell, foreclosure Manager/Mortgage Officer of Gibraltar, "due to an administrative error" Gibraltar failed to advise Diane Smith, the Substitute Trustee, that the loan balance had been paid and the lien had been released. Consequently, on the appointed day, May 7, 1985, Smith conducted a foreclosure sale on the subject real property at the Harris County Courthouse. Diversified, the successful bidder, gave the Substitute Trustee a cashier's check for $2,732.00. On May 8, Smith executed and delivered a Substitute Trustee's Deed purportedly conveying the subject real property to Diversified.

It appears from the record that Gibraltar discovered the "administrative error" the day following the foreclosure sale. On May 8, 1985, Gibraltar informed Linda Henderson, a legal assistant at Lapin, Totz & Mayer, that the subject foreclosure was in error. Reportedly, Henderson immediately attempted to contact a representative of Diversified by telephone. Unable to reach anyone at Diversified, Henderson prepared a letter, delivered the following day, informing Diversified that the subject foreclosure was invalid and that accordingly, they should contact her. From a correspondence attached to Henderson's affidavit, it appears that several days later Elliott Sluskey, President of Diversified, called Henderson in response to her letter and requested a schedule reflecting the sequence of events leading up to the invalid foreclosure. On June 27, 1985, Mark Stout, an attorney with Lapin, Totz & Mayer, attempted to return or tender by enclosing in a letter, the same cashier's check issued by Diversified for payment on the subject real property and given to Diane Smith, Substitute Trustee. In order to clear title, Stout's letter also asked Diversified to reconvey any interest it may have on the property to the Johnsons by executing a deed Stout had enclosed.

On July 2, 1985, in response to legal proceedings initiated by Diversified to remove the Johnsons from the subject property, Stout, again by letter, advised Diversified it had no legal interest in the subject property. On July 3, 1985, Gibraltar joined by the Johnsons filed suit against Diversified for cancellation of the Substitute Trustee's Deed to Diversified. In May of 1986, Diversified effectively cleared the title on the Johnsons' property by conveying to them a special warranty deed in consideration for the Johnsons' assignment of their right, title, interest, and claim to all possible causes of action against Gibraltar; Diane Smith, Substitute Trustee; and Lapin, Totz & Mayer. The trial court then granted Diversified's motion to realign the parties reflecting Diversified and the Johnsons as the plaintiffs and Gibraltar, Diane Smith, Substitute Trustee, and Lapin, Totz & Mayer as the defendants. Subsequent to realignment, the trial court granted defendants' motion for summary judgment dismissing all of Diversified's causes of action except for the issue of whether Gibraltar made a valid tender of the consideration paid by Diversified at the purported foreclosure.

■ Appellant's second, third, and fourth points of error assert the trial court erred in dismissing Diversified's causes of action for breach of contract and warranty, common law fraud, and fraud in the sale of real estate pursuant to TEX.BUS. & COM. CODE ANN. § 27.01 (Vernon 1987), and negligence and negligent misrepresentation. We concur with the holding in *Diversified, Inc. v. Walker*, 702 S.W.2d 717 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.), in which Diversified, again the purchaser of real property at a void foreclosure sale, asserted most of the same allegations as in this case. In *Walker* the court stated in regard to Diversified's warranty claims:

We conclude that there is no precedent in the law that would support any theory of warranty on the part of the noteholder ... One who bids on property at a foreclosure sale does so 'at his own peril.'

*Id.* at 723. Similarly, the court dismissed appellant's arguments asserting statutory fraud under TEX.BUS. & COM.CODE § 27.01 and negligence. Pointing out the less demanding nature of § 27.01 as opposed to common law fraud, the court remarked that:

We remain unconvinced that appellant has alleged or proved the necessary facts in this case to establish a 27.01 fraud. Without supporting authority, we, as an intermediate appellate court, decline to sustain this argument.

702 S.W.2d at 723.

■ Appellant's attempts to distinguish this case from *Walker* are, at best, not persuasive. Indeed, the facts in this case are less supportive of common law or statutory fraud claims than in *Walker*, where no explanation was given for conducting the void foreclosure sale. Here, administrative error was asserted, which appellant does not deny but does assert that such constitutes "a reckless disregard of the rights of others and the failure of the system." Because we are unmoved by this argument and because we still find no supporting authority for appellant's position, we too decline to sustain this argument.

■ Additionally, we follow the *Walker* court in finding "no duty," an essential element of negligence, to support appellant's claims based on negligence or negligent conduct in this case. 702 S.W.2d at 723. Appellant's second, third and fourth points are overruled.

■ However, we note the different nature of appellant's first point of error. Appellant asserts error in dismissing its cause of action under the Deceptive Trade Practices Act, (DTPA). Application of the DTPA appears to rest on two factors: (1) establishing "consumer" status as defined in § 17.45(4) of the Act and (2) showing actual damages as a result of one of the four acts specified in § 17.50(a) of the Act. The appellant does qualify as a consumer and asserts five deceptive acts from the enumerated acts included in § 17.46(b) of the Act. These asserted violations include:

5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quan-

tities which they do not have or *that a person has a sponsorship, approval, status, affiliation, or connection which he does not* (emphasis added);

12) *Representing that an agreement confers* or involves *rights*, remedies, or obligations *which it does not have* or involve, or which are prohibited by law (emphasis added);

14) *Misrepresenting the authority of a* salesman, representative or *agent* to negotiate the final terms of a consumer transaction (emphasis added);

19) *Representing* that a guarantee or warranty confers or *involves rights* or remedies which it does not have or involve ... (emphasis added);

23) *The failure to disclose information* concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Importantly, appellant's first four asserted violations under the DTPA contain no requirement of knowledge or intent to deceive. Our supreme court has stated, in construing the DTPA, that we must presume every word *excluded* from the statute, was excluded for a purpose. *Cameron v. Terrel & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). "Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision. *Id.* at 540. Additionally, it is well established that the DTPA was *not* designed to be a codification of the common law and any common law defenses may not be used to defeat a claim under it. *Joseph v. PP.G. Industries, Inc.*, 674 S.W.2d 862, 865 (Tex. App.—Austin 1984, writ ref'd n.r.e.).

This court is also mindful of § 17.44 of the Act which dictates that the Act "shall be liberally construed and applied...." In *First Title Co. v. Cook*, 625 S.W.2d 814 (Tex.App.—Fort Worth 1981, writ dism'd), the court stated, in reference to its position as an intermediate appellate court, "[w]e are required to give the DTPA the most liberal construction and comprehensive application possible, without doing violence to its terms." *Id.* at 817. Indeed, this court has sustained a DTPA violation in spite of the fact that a party's conduct may not have given rise to a contract when the seller refused to comply with an offer of sale to the buyer. *See Martin v. Lou Poliquin Enterprises, Inc.* 696 S.W.2d 180 (Tex.App.—Houston [14th Dist] 1985, writ ref'd n.r.e.). We sustain appellant's first point of error.

 Appellant's fifth point of error asserts trial court error in dismissing the Johnsons' cause of action in damages for wrongful foreclosure. Here, appellant correctly points out that following a wrongful foreclosure sale conducted pursuant to a power of sale contained within a deed of trust, the mortgagor may seek two *alternative* remedies. The mortgagor may elect to: (1) set aside the void trustee's deed; or (2) recover damages in the amount of the value of the property less indebtedness. *See Owens v. Grimes*, 539 S.W.2d 387, 390 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). In *Houston Sash & Door Company, Inc. v. Davidson*, 509 S.W.2d 690, 692 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.), the court stated in reference to a mortgagor's recovery in a wrongful foreclosure:

> Plaintiff, having two inconsistent remedies, only one of which could be granted, made his election; and, having made the election, he is bound thereby. [citations omitted]

*Id.* at 692. Here, the Johnsons made an election to rescind the sale and clear title on the subject property pursuant to the written assignment. The Johnsons *could not* assign back to Diversified a remaining cause of action for damages because none existed. Appellant cites no authority on point for her position that the Johnsons could elect to rescind the sale and *still* maintain an assignable cause of action for damages. We overrule the fifth point of error.

 Appellant's sixth point of error reads:

The trial court erred in granting defendant's motion for summary judgment to dismiss Diversified's causes of action without granting a money judgment to [sic] Diversified whole

Although Diversified filed an amendment to its brief, we find absolutely no merit in appellant's argument on this point in light of the fact that the trial court severed the issue of proper tender from the order of summary judgment. Appellant still has the opportunity to be made whole on the remaining issues in the trial court. The sixth point is overruled.