Q.O. "Bo" STEWART, Appellant,

v.

Shannon Kelley CLARK and Marjorie G. Hugo, Appellees.

No. 13–83–461–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1984.

Lola L. Bonner, Rockport, for appellant.

S. Reese Rozzell, Rockport, for appellees.

Before NYE, C.J., and KENNEDY and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is a mechanic's and materialman's lien case.

Appellant, Q.O. "Bo" Stewart (Stewart), is a general contractor. Appellees, Shannon Kelley Clark and Marjorie G. Hugo, were joint tenants and co-owners of a home located in Key Allegro Island Estates in Aransas County. In August 1980, the property owned by appellees was damaged as a result of Hurricane Allen. The insurance agent for appellees arranged a meeting with the insurance adjuster and appellant Stewart to make an appraisal of damages. The adjuster determined that approximately $9,000 would restore the house to the condition that it was in before the storm. Appellees then authorized Stewart to begin repairs. There is conflicting testimony regarding what repairs were authorized. The contract between the parties was oral and was never reduced to writing.

Appellees were in California during much of the time the house was being repaired. Before leaving for California, appellees gave the appellant $1,000 to begin the repairs. They sent him two additional installments of $2,000 each, for a total of $5,000. At the time the appellees paid their last installment of $2,000, they acknowledged that additional money was due. They requested appellant to account specifically for any future work he performed. When the appellees returned, appellant delivered an itemized statement to them showing the total cost of his services to be $7,419.37. Appellees did not pay the additional $2,419.37. Appellant then filed a Mechanic's and Materialman's Lien affidavit to recover the money he claims he was owed. Appellees sold the house in March 1982, subject to a deposit to "bond around" appellant's lien.

Stewart then brought suit to foreclose his lien and, alternatively, a suit on debt. Appellees answered, specifically denying that the conditions precedent to his right to recovery had been met and claiming that the subject property was the homestead of the appellees. Appellees also filed a counterclaim against Stewart for the loss of the use and benefit of the money that they deposited to "bond around" the lien. Trial was before the court, which held: 1) that appellant Stewart take nothing by his suit; 2) declared that the Mechanic's and Materialman's Lien was null and void; and 3) denied appellees recovery of their counterclaim.

Appellant asserts three points of error on appeal. First, he claims that the trial court erred in denying him foreclosure of his statutory lien. Second, he contends that the trial court erred in denying his constitutional lien and, last, he claims that the trial court erred in failing to award him judgment for his debt.

■ Although a request for findings of fact and conclusions of law was made, none were prepared or filed. Appellant does not bring forward a point of error on this failure to act by the trial court. Therefore, any error on the part of the trial court is unassigned and waived. *Cameron v. MacDonell,* 659 S.W.2d 911 (Tex.App.—Corpus Christi 1983, no writ). When no findings of fact and conclusions of law are filed, the trial court judgment implies all necessary fact findings in support of its judgment; and, in reviewing the record to determine if there is any evidence supporting the judgment and its implied findings, it is proper for us to consider only the evidence favorable to the issue and disregard all evidence or inferences to the contrary. *Carter v. William Sommerville and Son, Inc.,* 584 S.W.2d 274 (Tex.1979); *Raymond v. Aquarius Condominium Owners' Ass'n, Inc.,* 662 S.W.2d 82 (Tex. App.—Corpus Christi 1983, no writ). The judgment of the trial court must be affirmed if it can be upheld upon any legal theory that finds support in evidence. *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977);

*Owens v. Travelers Insurance Co.*, 607 S.W.2d 634 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

■ First, appellant claims that the trial court erred in denying appellant foreclosure of his statutory lien because the appellees did not prove that the property was their homestead. Alternatively, appellant asserts that the agreement between the parties did not have to be in writing before a lien for improvements could be asserted against the homestead because it is a single person homestead. He urges that, while Article XVI, Section 50 of the Texas Constitution specifically provides protection from forced sale of a single person's homestead, the provision does not require that a written contract must be entered into with the single person before a valid lien may be secured for improvements to such homestead. Article XVI § 50 of the Texas Constitution reads as follows:

Sec. 50. The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, *or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;* nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. (Emphasis supplied.)

Appellant argues that this section, as amended, simply sought to afford single people relief from forced sale, but did not change the law to require a contract in writing before a lien for improvements could be asserted against a single adult homestead. We must disagree.

■ There are three situations in which a forced sale of homestead property may occur: 1) for payment of purchase money lien; 2) for satisfaction of taxes due on property; and 3) for payment for work and materials used for construction of improvements on property. TEX. CONST. Art. XVI § 50 (Vernon Supp.1984); *Franklin v. Woods*, 598 S.W.2d 946 (Tex.Civ.App. —Corpus Christi 1980, no writ). A lien may be placed on a homestead only when created in accordance with the constitution. *Fidelity Savings & Loan Ass'n of Port Arthur v. Baldwin*, 416 S.W.2d 482 (Tex. Civ.App.—Beaumont 1967, writ ref'd n.r. e.). In the case of a marital homestead, both spouses are required to sign when a lien is being created on property which is considered homestead at the time of the transaction. *Minnehoma Financial Co. v. Ditto*, 566 S.W.2d 354 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). The requirement that both spouses sign the contract is intended to protect a spouse from possible loss of existing homestead rights without his consent. *Minnehoma Financial Co. v. Ditto*, 566 S.W.2d at 357. In 1973, the Legislature saw fit to allow a single individual the protection from forced sale of his homestead. Prior to this amendment, an individual could freely mortgage his homestead without restrictions. Now, such property may be mortgaged only for purchase money, money to pay for work and materials improving the property, property contracted for in writing and money to pay the taxes upon the property. TEX. CONST., Art. XVI § 50 (Vernon Supp.1984).

It is only logical that the Legislature intended the same protections to be afforded the individual homestead as the marital homestead. The requirement of a contract in writing is for the protection of the home-

stead property, not simply the marital homestead. The purpose of requiring the contract to be in writing is the protection of the parties from forced sale without the safeguards and specifications that a contract in writing employs. We believe that to require a contract be in writing for repairs on a marital homestead, but not to require the same for a single adult homestead, would be in derrogation of the constitution and discriminatory.

Appellant cites the case of *Judson v. Scanlan*, 341 S.W.2d 702 (Tex.Civ.App.—Waco 1960, no writ), as authority for his proposition that the contract need not be in writing. This case was handed down several years before the Legislature amended Art. XVI § 50 to include an individual adult homestead. The other cases appellant cites for his position are not in point.

Appellant also cites TEX.REV.CIV. STAT.ANN. art. 5460 (repealed by Acts of 1983, 68th Leg., p. 3729, ch. 576, § 6 eff. January 1, 1984) as authority for his position that only a husband and wife must enter into a written contract for improvements to their homestead. Appellant suggests that this article has been amended three times since 1967 and because the Legislature did not change the article to specifically include a single homestead, this was not their intent. We note that in TEX. PROP.CODE ANN. § 53.059(a) and (c) (Vernon Supp.1984), which replaced the repealed article, the section requires:

> "(a) To fix the lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms. of agreement.
>
> \*  \*  \*  \*  \*  \*
>
> (c) If the owner is married, the contract must be signed by both spouses."

It is apparent to us that, under the new "Property Code," the contract must be in writing, regardless of whether a single or family homestead, in order to establish a *lien for improvements*.

Appellant also argues that appellees did not prove that they occupied the land as homestead. The burden of proving homestead is on the party claiming such as a homestead. *Burk Royalty Co. v. Riley*, 475 S.W.2d 566 (Tex.1972); *Pace v. McEwen*, 617 S.W.2d 816 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). To sustain a claim of homestead, there must be proof of overt acts of homestead usage and intent on the part of the owner to claim the land as homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.).

Testimony elicited at trial showed that the appellees purchased the property in 1979 and used the home as their residence until it was sold. Marjorie Hugo, one of the appellees, testified that their investment business took them to California, but they owned no other real property. She claimed that they purchased the property as a retirement home. Katherine McClester, an employee of the Tax Assessor-Collector in Aransas County, testified that appellee Hugo had filed for and received an over-65 tax exemption on the property in question. Mrs. Hugo also testified that she had a Texas Driver's License and was a registered voter in Aransas County in 1980.

We conclude that the trial court could have properly found (in support of its judgment) that the residence at 1818 Bayshore Drive was the homestead property of, at least, Mrs. Hugo. Appellant's first point of error is overruled.

In appellant's third point of error, he asserts that the trial court erred in failing to award him judgment for debt.

First, we note that the contract between the parties was oral in nature. Appellees acknowledged in their brief that they authorized Stewart to make certain repairs. They paid him $5,000. They acknowledged at one point that additional monies were due.

Appellant testified that the $5,000 he received from appellees did not cover his

expenses. He claimed that his total bill was $7,419.37. He testified to all the work that he had performed, including $2,085.00 in yard work.

Mrs. Hugo, one of the appellees, testified that she believed the work performed by appellant was in the neighborhood of $5,000.00. In addition to work performed by appellant, Mrs. Hugo claimed that the insurance proceeds that she received were used for other items needing repair. She testified, for instance, that the air compressor and hot water heater needed to be replaced; that the washer and dryer needed to be replaced; and that they had to pay someone to clean out the garage and repair the door. She testified that she felt a $2,000 charge for yard work was unreasonable and unauthorized.

Shannon Kelly Clark, the other appellee, testified that she did not authorize appellant to perform $2,000.00 worth of yard work. She said that she believed they had been overcharged by the appellant for this work.

■ Viewing all of the evidence in a light most favorable to the trial court as we are required to do in such cases, we find that the court could have properly found from the evidence that the appellant failed to prove that he was owed additional money for the work he had performed for the appellees. Appellant's third point of error is overruled.

In view of our disposition of points of error one and three, we similarly overrule appellant's second point of error in which he asserts that the trial court erred in denying him a Constitutional lien.

The judgment of the trial court is affirmed.