**AFFIRMED and Opinion Filed December 28, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-20-00071-CV**
_____

**LENDINGHOME FUNDING CORPORATION, Appellant**

**V.**

**TUESDAY REAL ESTATE, LLC, KEVIN MILLER, HARVA DALE MILLER, AND ROXANE L. MILLER, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-00266**

## MEMORANDUM OPINION

Before Justices Schenck, Pedersen, III, and Garcia

Opinion by Justice Pedersen, III

Appellant LendingHome Funding Corporation (LendingHome) appeals the trial court's judgment, which (i) found Kevin Miller and Roxane Miller had a valid homestead interest in a house located at 10643 Saint Lazare Drive, Dallas, Texas, 75229 (the Property) and (ii) ordered LendingHome to pay $637,000.00 to Tuesday Real Estate, LLC (Tuesday). In six issues, LendingHome asserts the trial court erred: (i) in finding the Millers had a valid homestead interest in the Property; (ii) in failing to find that LendingHome was a bona fide mortgagee; (iii) in failing to find that Tuesday was a bona fide purchaser; (iv) in failing to find Kevin engaged in fraud;

(v) in failing to find Kevin breached loan terms; and (vi) in entering an impermissibly vague, confusing, and uncertain final judgment. We affirm the judgment of the trial court.

## I. BACKGROUND

### A. Transfers Regarding the Property

Delmo Johnson owned the Property in 2015. On May 12, 2015, Delmo transferred his interest in the Property to Harva Dale Miller by warranty deed.[1] On that same date, Delmo gave the executed warranty deed to his real estate broker, Gardine Froman. Gardine did not record the warranty deed at that time. Neither Delmo nor Gardine informed Harva of this executed warranty deed at the time of this transfer.

Delmo died on May 14, 2015. Delmo's Last Will and Testament left the Property to Kevin, who completed probating Delmo's will on June 22, 2015. At that time, Kevin was married to Roxane, and Kevin testified that they moved into the Property with their children in August 2015. Kevin also testified that he believed he owned the Property and that he had no knowledge of Delmo's warranty deed to Harva.

On December 1, 2015, Kevin borrowed $405,000.00 from LendingHome, through a commercial loan secured by a deed of trust on the Property. Roxane did

---

[1] Harva is Kevin's mother.

not sign or execute the promissory note or deed of trust. Kevin defaulted on the note. LendingHome posted the Property for foreclosure sale on June 12, 2017, and sold it to Tuesday on July 4, 2017 for $637,000.00. In July 2017, Gardine found Delmo's May 12, 2015 warranty deed to Harva, and Gardine informed Kevin of the earlier transfer of the Property. On July 11, 2017, Gardine recorded this warranty deed.

## B. Litigation on the Property

On January 8, 2018, Tuesday sued Kevin, Harva, and LendingHome for trespass to try title, to quiet title, to recover its purchase price, and for declaratory judgment. Roxane intervened in the lawsuit—asserting counterclaims "based on an unlawful and illegal transaction" against LendingHome. LendingHome raised cross claims of fraud and breach of contract against Kevin. The parties filed answers to the respective claims raised. LendingHome pled no affirmative defenses at any time. Tuesday pled the affirmative defense of estoppel against Kevin and Harva.

The trial court held a nonjury trial on October 8, 2019, at which (i) Harva, (ii) Kevin, and (iii) Arturo Singer—who is a member of Tuesday—testified. LendingHome called no trial witnesses. Gardine's deposition testimony was read into the record. Several documents related to the Property and Kevin's loan agreement were admitted into the record—including Kevin's complete declaration, which testified as to his use and occupation of the Property as a homestead. On October 18, 2019, the trial court entered a final judgment, which provides, in pertinent part:

–3–

The Court received, heard, examined and considered the evidence, exhibits, trial transcript, and based on the evidence, adjudges the following:

1. The real property, the subject of this cause, is legally described to wit: Being Lot 7, in Block 3/5535, LES JARDINS ADDITION, SECOND INSTALLMENT, an Addition to the City of Dallas, Texas, according to the Map thereof recorded in Volume 42, Page 99, of the Map Records of Dallas County, Texas (the "Premises").[2]

2. The Premises was the statutory and constitutional homestead of Kevin Miller and Roxane L. Miller at all times relevant and relating to the claims and defenses at issue in this cause.

3. The Deed of Trust executed by Kevin Miller and LendingHome Funding Corporation, and filed of record in the Deed Records of Dallas County, Texas on December 1 2015, is not in compliance with the mandate of the Texas Constitution, Article XVI, Section 50 and the Texas Property Code, Chapter 41 governing the creation of a lien upon a Texas family homestead; and, is therefore void and of no force and effect as a lien upon the Premises for the purpose of securing the payment of the loan between Kevin Miller and LendingHome Funding Corporation.

. . . .

5. LendingHome Funding Corporation's claims against Kevin Miller are DISMISSED and LendingHome Funding Corporation shall take nothing against Kevin Miller.

. . . .

8. Harva Dale Miller obtained all title, rights, and interests in the Premises based upon a conveyance by Warranty Deed from Delmo L. Johnson to Harva Dale Miller signed the 12th day of May, 2015 and filed of record in the deed records of Dallas County, Texas, on the 11th day of July, 2017.

9. Tuesday Real Estate, LLC shall recover from LendingHome Funding Corporation the sum of $637,000.00 with prejudgment interest at the rate of 5.25 percent (5.25%) per annum beginning on the date of the filing of this suit and ending the day preceding the signing of this Final Judgment and post judgment interest from the date of the signing of this Final Judgment until paid at the rate of 5.25 percent (5.25%) per annum.

---

[2] This is the legal description of the Property.

10.     All right, title, and interest to the Premises, as between the parties to this cause, is vested and quieted in Kevin Miller and Roxane Miller.

. . . .

**IT IS SO ORDERED.**

The trial court further entered numerous findings of fact and conclusions of law, including LendingHome's inspection of the Property, and that LendingHome had no valid or enforceable lien or security interest in the Property. On October 18, 2019. LendingHome moved for new trial; the motion was denied; and this appeal followed.

## II.     ISSUES RAISED

LendingHome raises six issues to our Court, which we reproduce verbatim:

1. Whether the Trial Court erred in finding that the Millers had a valid homestead interest in the Property, despite never having legal or equitable title to the Property.
2. Whether the Trial Court erred when, contrary to Texas Supreme Court precedent, it failed to find that LendingHome was a bona fide mortgagee.
3. Whether the Trial Court erred when, contrary to Texas Supreme Court precedent, it failed to find that Tuesday was a bona fide purchaser.
4. Whether the Trial Court erred when it failed to find that Kevin engaged in fraud by making false representations to LendingHome to induce LendingHome to make the Loan to Kevin.
5. Whether the Trial Court erred when it failed to find that Kevin breached the terms of the Loan by occupying the Property and defaulting on his repayment obligations under the Loan.
6. Whether the Trial Court's Final Judgment is impermissibly vague, confusing, and uncertain.

## III.     STANDARDS OF REVIEW

### A. Findings of Fact

A party appealing from a nonjury trial in which the trial court made findings

of fact should direct its attack on the sufficiency of the evidence to specific findings of fact, rather than to the judgment generally. *See Thompson & Knight L.L.P. v. Patriot Expl. L.L.C.*, 444 S.W.3d 157, 162 (Tex. App.–Dallas 2014, no pet.).[3]

Here, LendingHome's briefing does not specify whether it challenges the legal sufficiency or the factual sufficiency of the evidence. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding—crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

"When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.) (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). "We set aside

---

[3] "Texas Rule of Appellate Procedure 33.1(d) provides that '[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence ... may be made for the first time on appeal in the complaining party's brief.'" *Office of Atty. Gen. of Tex. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012).

the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* As long as the evidence falls 'within the zone of reasonable disagreement,' we will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller*, 168 S.W.3d at 822). In conducting a factual sufficiency review, we should detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

### B. Vague, Confusing, or Uncertain Judgment

"A judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated." *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). (citing *Steed v. State,* 143 Tex. 82, 183 S.W.2d 458, 460 (1944) (quoting 25 TEX. JUR. § 84 & (Supp. 1939)). A judgment should be construed as a whole toward the end of harmonizing and giving effect to all the court has written. *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (citing *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)).

## IV. HOMESTEAD

In Texas, single adults and heads of families may designate a certain amount of real property as their homestead. TEX. CONST. art. XVI § 51. The designation of real property as a homestead has many benefits, most notably the protection of the property from seizure and sale for the payment of most debts. TEX. CONST. art. XVI § 50(a). Homestead protections were intended to protect families from the "miseries and dangers of destitution" and to foster home ownership and independence. *Franklin v. Coffee*, 18 Tex. 413, 415–16 (1857). We have previously addressed homestead:

> Homestead rights have traditionally enjoyed great protection, and statutes that affect such rights are liberally construed to protect the homestead. *Id.; see also Florey v. Estate of McConnell,* 212 S.W.3d 439, 443 (Tex. App.—Austin 2006, pet. denied). The burden of proving homestead is on the party claiming such a homestead. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex. 1972). *To sustain a homestead claim, there must be proof of overt acts of homestead usage and intent on the part of the owner to claim the land as homestead. Stewart v. Clark,* 677 S.W.2d 246, 250 (Tex. App.—Corpus Christi 1984, no writ).

*Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet.) (emphasis added).

## V. DISCUSSION

**Issue One: Whether the Trial Court Erred in Finding that the Millers Had a Valid Homestead Interest in the Property**

LendingHome asserts the trial court erred when it found:

> The Deed of Trust executed by Kevin Miller and LendingHome Funding Corporation, and filed of record in the Deed Records of Dallas County, Texas on December 1 2015, is not in compliance with the mandate of the Texas Constitution, Article XVI, Section 50 and the Texas Property Code, Chapter 41 governing the creation of a lien upon a Texas family homestead; and, is therefore void and of no force and effect as a lien upon the Premises for the purpose of securing the payment of the loan between Kevin Miller and LendingHome Funding Corporation.

First, LendingHome asserts that the Millers could not have a valid homestead interest in the Property because they held no legal title to the property. Relying on *Garrard v. Henderson*, LendingHome suggests that a homestead is limited to those who both own and possess real estate as a residence. 209 S.W.2d 225, 230 (Tex. Civ. App.—Dallas 1948, no writ) ("We think that there is no better law established in Texas than that the possession and used [sic] of real estate by one who owns it, and who, with his family, resides upon it, makes it the homestead of the family in law and in fact."). Relying on *Purdin v. Jenkins*, LendingHome asserts that mere occupancy does not transform a property into a homestead. 337 S.W.2d 418, 421 (Tex. Civ. App.—Dallas 1960, no writ) ("Occupancy of property does not ipso facto make the property a homestead."). The Millers and Tuesday respond that a party can have a homestead on property that it does not own. We agree with the appellees.

"Texas law is clear that possession of a homestead interest is not dependent upon ownership." *Denmon*, 285 S.W.3d at 595.

> There is nothing in the constitution or laws of this state which prevents the homestead right of the wife from attaching to any interest in land which may be owned by the husband or wife, or by the community, and

be used as homestead; and the great current of authority is to the effect that *the homestead right will attach to an equitable estate, an estate for life, or even to a leasehold interest.*

*Wheatley v. Griffin*, 60 Tex. 209, 211 (1883) (emphasis added); *see also Beckner v. Barrett*, 81 S.W.2d 719, 725 (Tex. Civ. App.—Dallas 1935, writ dism'd) ("It is now definitely settled in this state that a homestead right will attach to a leasehold interest in land."). Indeed, the Texas Supreme Court has held: "[A] house can be a homestead even if the owner has no ownership interest in the land." *Norris v. Thomas*, 215 S.W.3d 851, 854 (Tex. 2007).

Here, the record shows that—at the time of Delmo's death—neither Kevin, Harva, nor Roxane knew of Delmo's warranty deed granting the interest in the Property to Harva. Kevin and Harva both testified they learned of this warranty deed in 2017. At trial, the parties disputed whether Kevin, Roxane, and their family used and occupied the Property as their homestead. The record contains Kevin's affidavit, which was unobjected-to, and states:

3.  . . . . I became the sole heir of Delmo Johnson, Jr.
4.  Among the assets I inherited was real property, including a home, located at 10643 Saint Lazare Drive, Dallas, Texas 75229 (the "Home'"). The Home contains all of the amenities of a habitable home. At the time of this inheritance, I was unaware that my mother, Harva Dale Miller, had any interest in the Home since neither she nor Delmo Johnson ever informed me or my wife of that fact. I did not learn of my mother's interest in the Home until 2017 when the deed was recorded by which time I had already move into the Home and established my homestead interest in the real property and the Home as had my wife, Roxane L. Miller.
5.  In August 2015, the [sic] Roxane L. Miller, my children and I moved into the Home. Since August 2015, Roxane L. Miller, my children

–10–

and I have continuous [sic] used and occupied the Home as our homestead and neither I nor Roxane L. Miller has [sic] another homestead. Since August 2015, all of the personal possessions, personal books and records, and pets of Roxane L. Miller my children and me have been located at the Home. The driver's licenses of Roxane L. Miller and me both reflect the address of the Home, we both receive our mail at the Home, and our personal bank accounts reflect the Home as our address. Beginning in August 2015, a renovation of the Home began and continued for approximately one (1) year and Roxane L. Miller, my children and me all occupied and used the Home during the entire renovation period.

LendingHome directs us to Harva's testimony during trial:

Q. Okay. So the year before that Delmo died, there was no one living at that Saint Lazare house, was there?
    A. Nobody lived there at all after I left.
Q. Okay.
    A. Except Delmo.
Q. Okay.
    A. And Kevin, if he'd go over and spend the night with him.
Q. Okay. But he wasn't actually living continually there, it would be on and off?
    A. Not that I know of, honey. I really don't really know if he stayed there, if he roomed there or whatever, because I wasn't— no.
. . . .
Q. Okay. All right. And Kevin and Roxane weren't living in the house while it was being renovated, correct? I think you told me in the deposition –
    A. No. They had it tore up so bad, they could not have lived there.
. . . .
Q. And then while [Kevin and Roxane] were in Dallas, that they would live in one of the houses that Roxane's parents own; is that correct?
    A. That's right.

The record contains the loan documents, one of which is a "Business Purpose &

Occupancy Statement" that Kevin signed on December 1, 2015, and provides:

–11–

BORROWER(S): Kevin Miller, a married person

. . . .

Before me. the undersigned duly authorized to take acknowledgments and administer oaths, personally appeared the undersigned Borrower(s), who upon being duly sworn on oath stated the following:

1. **Property is/will not be owner occupied.** The property will not be occupied or claimed as a Primary or Secondary Residence by any of the Borrowers, and may produce revenue. Each Borrower(s) now owns, resides, uses and claims another property or properties as Borrower(s) Primary Residence.

2. **Lender is originating the loan in reliance upon the occupancy status indicated above** . . .

3. **Borrower(s) also understands that any false statements, misrepresentations or material omissions may result in civil and criminal penalties** . . .

. . . .

5. The undersigned Borrower further hereby states and warrants that the above transaction is for a business or commercial purpose . . .

(emphasis in original). The promissory note and deed of trust between Kevin and LendingHome both state "Borrower represents and warrants that the proceeds of this loan will be used by Borrower for business purposes and that Borrower does not intend to, and will not occupy or reside on the Property[.]" During trial, the parties asked Kevin about the loan application and loan documents:

Q. All right. How much experience do you have in the real estate business, in the financing business?
        A. Absolutely none at all.
Q. All right. And when you were doing all these -- this loan and everything, how were you proceeding it? Who helped you through all this?
        A. The group with LendingHome, with paperwork, telling me what to sign, where to sign, et cetera.
Q. Okay. Did they ever question you about your wife, Roxane's, signature?
        A. No.

–12–

. . . .

Q. All right. Let me ask you: Have you ever seen one of these documents, business purpose and occupancy statements, before?

    A. No, I haven't.

Q. Do you even know what it's all about?

    A. I—I don't. And that's what I was just sitting here thinking about, just by sitting here looking at this.

Q. All right. Was everybody aware of the fact that you were living in the house?

    A. Meaning who?

Q. Pardon?

    A. Meaning who? Who all was –

Q. Well, I mean, did you make any secret to that?

    A. No.

Q. Okay.

    A. And we even -- we even still had furniture in the house.

Q. All right.

    A. It even shows in several photos while the house was being renovated.

. . . .

Q. When you completed your loan application, what address did you list as your home address?

    A. That was a long time ago. I can't remember if I had listed my Jacksonville address at the time. I'm pretty sure that I listed the Jacksonville address at the time because I'm—I got the loan right after my father passed away. And then we moved from east Texas to Dallas into this house so that I could be over the estate and take care of the estate. And I was not—I did not own the house in east Texas, I was renting it. So from that point on, after I got the loan and took care of what I needed to take care of in east Texas, myself and my family and my kids moved to Dallas into this house.

In discussing the December 1, 2015 loan and where he lived, Kevin testified:

    A. . . . I had to have moved to Dallas not long after my father passed away. So I think I did—I think I was living in the house at that time, because that's quite a ways past my father being passed away. Because he passed away in July—June. June.

Q. When you're talking about your "father", who are you talking about?

    A. My stepfather.

Q. You're talking about Delmo?
    A. Uh-huh.
Q. Okay.
    A. Yeah, he was a father to me.

In viewing the evidence in the light most favorable to the challenged finding, we conclude that more than a scintilla of evidence existed to support the trial court's finding that Kevin and Roxane had a valid homestead interest in the Property. *Formosa Plastics*, 960 S.W.2d at 48. In viewing the entire record supporting and contradicting the finding of the trial court, we cannot conclude its finding was so contrary to the evidence as to be clearly wrong and manifestly unjust. *Fulgham*, 349 S.W.3d at 157; *see Windrum*, 581 S.W.3d at 781. Accordingly, we conclude the evidence in the record was both legally and factually sufficient to support the trial court's finding that Kevin and Roxane Miller had a valid homestead interest in the Property.

LendingHome next asserts that Kevin is estopped from claiming the Property as a homestead. Estoppel is an affirmative defense, which must be pleaded. Tex. R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense.") Here, LendingHome failed to plead estoppel and pled no other affirmative defenses. "Generally, an affirmative defense is waived if not raised in a defendant's responsive pleading." *Willacy County Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018), opinion corrected on reh'g (Sept. 28, 2018).

However, "an unpleaded affirmative defense 'may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party fails to make an appropriate complaint.'" *Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 204 (Tex. App.—Dallas 2014, no pet.) (quoting *Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

Although LendingHome asserts that its estoppel affirmative defense was tried by consent, such is not reflected in the record. To the contrary, LendingHome directs us to Tuesday's pleadings and *its* affirmative defense pleadings of estoppel. Here, Tuesday and LendingHome were not aligned parties—instead, Tuesday sued LendingHome as a defendant. As such, we disagree that Tuesday's pleading of its affirmative defense applies to LendingHome. LendingHome next directs us to portions of the reporter's record to assert that "estoppel was therefore tried by consent in light of the evidence establishing Kevin's varying positions with respect to his occupancy and ownership of the Property, in tandem with Tuesday's pleading." But, such evidence was not developed under circumstances indicating that the parties understood the issue of *LendingHome's* affirmative defense of estoppel was in the case. *See Tenet Health*, 438 S.W.3d at 204. To the contrary, neither the judgment nor the findings of fact and conclusions of law contain any

discussion, findings, or conclusions regarding estoppel.[4] We conclude the issue of LendingHome's affirmative defense of estoppel was not tried by consent and was, therefore, waived. *Willacy County Appraisal Dist.*, 555 S.W.3d at 50. For those reasons, we overrule LendingHome's first issue.

## Issue Two: Whether the Trial Court Erred in Failing to Find that LendingHome Was a Bona Fide Mortgagee

Although LendingHome failed to plead its affirmative defense of its status as a bona fide mortgagee, it is evident from the record that the parties and trial court tried this affirmative defense by consent. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam) (discussing bona fide purchasers as an affirmative defense). The trial court explicitly found "LendingHome was not a 'bona fide mortgagee' of the Premises at any time relevant to this cause of action." LendingHome asserts this finding was error and instead argues it acquired its lien interest in the Property in good faith, for value, and without notice of: (i) Kevin and Roxane's homestead rights or (ii) Delmo's warranty deed to Harva. In response, the Millers assert that LendingHome's alleged status as bona fide mortgagee does not

---

[4] During trial, estoppel was explicitly mentioned only once, during Tuesday's closing argument:

> Kevin inherited nothing. He didn't inherit any title, he didn't inherit any right to possession, he didn't inherit any right to occupy. And he should be estopped now because of the Plaintiff's Exhibit Number 11 for claiming that he did. And I'm not sure he is claiming it now. Apparently he's claiming he didn't inherit any interest in the property.

We note the record contains neither a request for findings of fact and conclusions of law from LendingHome, nor objections to the trial court's findings of fact and conclusions of law.

defeat Kevin and Roxane's homestead rights. Tuesday responds that LendingHome waived its bona fide mortgagee affirmative defense.

When spouses have a homestead together, the property cannot be sold, conveyed, or encumbered without both spouses joining in the transaction. TEX. FAM. CODE ANN. § 5.001; *see* TEX. CONST. art. XVI, § 50(b) (one spouse may not sell or abandon homestead without consent of other spouse), § 50(k)(1) (one spouse may not secure a reverse mortgage without consent of other spouse); TEX. PROP. CODE ANN. § 41.0021(c) (spouse cannot transfer homestead to trustee of qualifying trust without other spouse joining in transaction). Here, it is undisputed that Kevin was married when he entered into the December 1, 2015 loan agreement. It is further undisputed that his wife, Roxane, did not enter into the loan agreement or otherwise consent to encumbering the Property. As we have concluded above, the trial court did not err in finding that Kevin and Roxane held a homestead interest in the Property. It is undisputed that LendingHome knew Kevin was married, and he is indicated as "married" on the loan documents.

A bona fide mortgagee acquires its interest in the property in good faith, for value and without notice of the claim or interest of a third party. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983) (citing *Houston Oil Co. of Texas v. Hayden*, 104 Tex. 175, 135 S.W. 1149 (1911)). A bona fide mortgagee is typically entitled to the same protections as a bona fide purchaser. *Noble Mortg. & Investments, LLC v. D & M Vision Investments, LLC*, 340 S.W.3d 65, 76 (Tex.

App.—Houston [1st Dist.] 2011, no pet.) (citing *Graves v. Guar. Bond State Bank*, 161 S.W.2d 118, 120 (Tex. Civ. App.—Texarkana 1942, no writ)).

Here, LendingHome failed to obtain consent from Roxane on the loan. The loan was an encumbrance on the Property. As the Property was Kevin and Roxane's homestead, any encumbrance on the Property required Roxane's consent. *See* FAM. § 5.001. As LendingHome failed to obtain Roxane's consent, the lien on the Property and resulting foreclosure are void. *Denmon*, 285 S.W.3d at 596.

> A void instrument has no effect, even as to persons not parties to it, and a contention that a document is void under homestead law may be asserted by anyone whose rights are affected by the instrument. *Florey,* 212 S.W.3d at 444 (concluding an estate had standing to contest the validity of a lien placed on a homestead); *Patterson v. First Nat'l Bank of Lake Jackson,* 921 S.W.2d 240, 247 (Tex. App.—Houston [14th Dist.] 1996, no writ) (concluding wife had standing to assert homestead claim on behalf of ex-husband without his joinder).

*Id*. at 597. Because LendingHome's lien was void, LendingHome acquired no interest in the Property and, therefore, was not a bona fide mortgagee. We conclude the trial court did not err in its finding that LendingHome was not a bona fide mortgagee. We overrule LendingHome's second issue.

**Issue Three: Whether the Trial Court Erred When It Failed to Find that Tuesday Was a Bona Fide Purchaser**

LendingHome next argues that the trial court erred in finding that Tuesday did not obtain a valid interest in the Property by virtue of the July 4, 2017 foreclosure

sale.[5] LendingHome attributes Tuesday's bona fide purchaser status from its own bona fide mortgagee status. In response, Tuesday asserts the trial court did not err in finding that it was not a bona fide purchaser. Tuesday argues that because LendingHome's lien was void, its consequent deed of trust on the Property, which derived from LendingHome's foreclosure sale, was also void. We agree with Tuesday.

A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third-party claim or interest. *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex. 2001). As we have concluded above, the trial court did not err in finding that LendingHome was not a bona fide mortgagee. "Typically, a void deed in the chain of title would foreclose the bona-fide purchaser defense." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 549 (Tex. 2016).[6] As LendingHome acquired no interest in the Property, the trustee's

---

[5] The trial court's findings of fact and conclusions of law state:

> 3.    The Substitute Trustee's Deed relating to the Premises, electronically recorded 0n July 17, 2017 is void and unenforceable.
> 4.    Tuesday Real Estate has no right, title, claim, or interest in the Premises arising from or conveyed by the void Substitute Trustee's Deed, filed July 17, 2017.
> . . . .
> 9.    Tuesday Real Estate acquired and has no legal right, title, or interest in the Premises

[6] The Texas Supreme Court includes the following parenthetical:

> *See, e.g.*, *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied) ("A void instrument passes no title, and the mere fact that the grantee–mortgagee is an innocent purchaser makes no difference."); *Wall v. Lubbock*, 52 Tex. Civ. App. 405, 118 S.W. 886, 888 (1909, writ ref'd) ("One holding under a void title cannot claim protection as an innocent purchaser."); *Henderson v. Lindley*, 75 Tex.

deed that LendingHome used to transfer the Property to Tuesday was, consequently, void. *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 130 (Tex. 1991) ("A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character."); *see, e.g.*, *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 723 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).[7] We conclude the trial court did not err in finding that Tuesday was not a bona fide purchaser. We overrule LendingHome's third issue.

**Issues Four and Five: Whether the Trial Court Erred in Dismissing LendingHome's Fraud and Breach of Contract Cross Claims against Kevin**

LendingHome's fourth and fifth issues first raise whether the trial court "erred when it failed to find" facts relating to its fraud and breach of contract claims. The Millers assert LendingHome waived these issues because—if LendingHome's challenges are to the absence of specific findings of fact—LendingHome requested no additional or amended findings after the trial court's made findings of fact and conclusions of law that did not expressly mention LendingHome's cross claims. *See*

---

185, 12 S.W. 979, 980 (1889) (noting that a purchaser "could not be an innocent purchaser under a void sale").

*Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d at 549–50.

[7] In *Diversified, Inc. v. Walker*, our sister court explained:

One who bids on property at a foreclosure sale does so "at his peril." Purchasers assume that the trustee has power to make the sale at their peril, and where he is without power, or there is other defect or irregularity that would render the foreclosure sale void, then the purchaser cannot acquire title to the property.

*Diversified, Inc.*, 702 S.W.2d at 723–24 (internal citations omitted).

TEX. R. CIV. P. 298.[8] In its briefing, LendingHome asserts the trial court erred when it dismissed LendingHome's cross claims against Kevin. The trial court's final judgment states:

> 5. LendingHome Funding Corporation's claims against Kevin Miller are DISMISSED and LendingHome Funding Corporation shall take nothing against Kevin Miller.

The trial court further entered findings that (i) Kevin borrowed $405,000.00 from LendingHome, (ii) Kevin executed a deed of trust securing a promissory note in that amount payable to LendingHome, (iii) Kevin represented that he was not residing in the property, would not reside at the property, and that the loan was for commercial purposes, and (iv) Kevin executed a "Business Purpose & Occupancy Statement" discussed above. We disagree that LendingHome waived these issues on appeal by failing to request additional findings. *See* TEX. R. CIV. P. 298. Given the trial court's findings and LendingHome's briefing, we understand these issues to challenge the

---

[8] Texas Rule of Civil Procedure 298 provides:

> After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions. The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court. Each request made pursuant to this rule shall be served on each party to the suit in accordance with Rule 21a.

> The court shall file any additional or amended findings and conclusions that are appropriate within ten days after such request is filed, and cause a copy to be mailed to each party to the suit. No findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions.

TEX. R. CIV. P. 298. A party asserting an independent ground or theory of recovery or affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver, as waiver is effected if findings by the trial court do not include any elements of the ground of recovery or defense asserted. *Augusta Dev. Co. v. Fish Oil Well Servicing Co, Inc.,* 761 S.W.2d 538, 542 (Tex. App.—Corpus Christi 1988, no writ); *MBank Abilene, N.A. v. Westwood Energy, Inc.,* 723 S.W.2d 246, 253 (Tex. App.—Eastland 1986, no writ).

legal and factual sufficiency of the evidence to support LendingHome's fraud and breach of contract claims.

The Texas Supreme Court has enumerated the elements of fraud as follows:

A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). We have enumerated the elements of a breach of contract claim as follows:

A successful breach of contract claim requires proof of the following essential elements: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the defendant's breach.

*Best Buy Stores, L.P. v. Shops at Pinnacle Park, LLC*, No. 05-17-01054-CV, 2018 WL 6716620, at *4 (Tex. App.—Dallas Dec. 21, 2018, no pet.). Here, the trial court entered no express findings of fact and conclusions of law on injuries or damages that LendingHome sustained. When the trial court does not file express findings of fact and conclusions of law, we presume the trial court made all necessary findings to support the judgment. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017). If those implied findings are supported by the evidence, we must uphold the judgment on any theory of law applicable to the case. *Sink v. Sink*, 364 S.W.3d

340, 344–345 (Tex. App.—Dallas 2012, no pet.). Regarding its request for damages in its claims against Kevin, LendingHome pled:

> 18. As a result of LendingHome making the loan to Defendant Kevin Miller based on his intentional false statements and ultimate default on the loan, LendingHome has suffered, and continues to suffer damages including but not limited to, out-of-pocket expenses, lost profits and attorney's fees necessary to defend this action.
> . . . .
> 23. LendingHome has suffered, [sic] and continues to suffer damages including but not limited to, out-of-pocket expenses, lost profits and attorney's fees necessary to defend this action as a result of Defendant Kevin Miller's breach.
> . . . .
> 25. As a result of Defendant Kevin Miller's fraud, LendingHome has suffered economic damages in the form of, out-of-pocket expenses, lost profits and attorney's fees necessary to defend this action in an amount not less than Seven Hundred Thousand Dollars ($700,000).
> 26. As a result of Defendant Kevin Miller's fraud, LendingHome is entitled to recover exemplary damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000). 27. Pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, LendingHome is entitled to recover its reasonable and necessary attorneys' fees and costs associated with prosecuting this action. 28. Pursuant to *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985), LendingHome is entitled to recover pre-and post-judgment interest, at the applicable rate as set by this Court.

To recover lost profits, a party must introduce "objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Reasonable certainty is required to prove lost profits. *E.g., Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). "Out-of-pocket damages are determined by comparing the value paid to the value received." *Stover v. ADM Milling Co.*, No. 05-17-00778-CV, 2018 WL 6818561, at *10 (Tex. App.—

Dallas Dec. 28, 2018, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998)).[9]

During trial, no witness testified as to LendingHome's injuries or damages. The record contains no documents as to LendingHome's out-of-pocket expenses, lost profits, or attorney's fees. Although there is no dispute Kevin defaulted on the note, there is no evidence as to when or how he defaulted. There is no evidence in the record as to whether Kevin paid the note down or not. The record is devoid of evidence that shows (i) objective facts, figures, or data from which LendingHome's alleged lost profits can be ascertained and (ii) the difference between the value of what LendingHome paid and the value it received. Thus, we must conclude neither factually nor legally sufficient evidence existed in the record as to LendingHome's injuries and damages. Accordingly, the trial court did not err (i) in its implied finding that LendingHome sustained no injuries or damages as to its claims against Kevin for fraud and breach of contract and (ii) in its according dismissal of those claims. Accordingly, we overrule LendingHome's fourth and fifth issues.

**Issue Six: Whether the Trial Court's Final Judgment Is Impermissibly Vague, Confusing, and Uncertain**

In its final issue, LendingHome asserts the final judgment is impermissibly vague, confusing, and uncertain. The Millers respond that LendingHome failed to

---

[9] *See also* Morriss–Buick Co. v. Pondrom, 131 Tex. 98, 113 S.W.2d 889, 890 (1938) (because out-of-pocket fraud damages are intended to provide actual compensation for the injury rather than profit, the proper measure of damages is the difference between the value of what was parted with and what was received).

raise this argument with the trial court and has, therefore, waived error. Tuesday responds that the final judgment is not impermissibly vague, confusing, and uncertain as to Tuesday. We agree with the Millers.

Here, the record shows LendingHome did not raise the issue of an impermissibly vague, confusing, and uncertain final judgment with the trial court. The record contains no objections to the final judgment, and LendingHome's motion for new trial raised no such issues. Thus, as this issue was not presented to or adjudicated by the trial court, we cannot consider this new argument. *See* TEX. R. APP. 33.1; *see also Tex. Dep't of Protective & Regulatory Services v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) ("[a]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."). Thus, LendingHome waived this issue. We overrule LendingHome's sixth issue.

## VI. CONCLUSION

Having overruled LendingHome's six issues, we affirm the judgment of the trial court.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

Dissenting, J. Schenck

200071F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LENDINGHOME FUNDING
CORPORATION, Appellant

No. 05-20-00071-CV     V.

TUESDAY REAL ESTATE, LLC,
KEVIN MILLER, HARVA DALE
MILLER, AND ROXANNE L.
MILLER, Appellees

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-00266.
Opinion delivered by Justice
Pedersen, III. Justices Schenck and
Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee TUESDAY REAL ESTATE, LLC, KEVIN
MILLER, HARVA DALE MILLER, AND ROXANNE L. MILLER recover their
costs of this appeal from appellant LENDINGHOME FUNDING
CORPORATION.

Judgment entered December 28, 2021.